UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KENNETH BUTLER, SR., | &#124; | |
| | &#124; | |
| Plaintiff, | &#124; | |
| | &#124; | No. 1:12-cv-01716-SEB-DML |
| vs. | &#124; | |
| | &#124; | |
| BALKAMP INC., NATIONAL | &#124; | |
| AUTOMOTIVE PARTS | &#124; | |
| ASSOCIATION, GENUINE PARTS | &#124; | |
| COMPANY, *et al.*, | &#124; | |
| | &#124; | |
| Defendants | &#124; | |

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF
NON-INFRINGEMENT AND INVALIDITY OF U.S. DESIGN PATENT NO. D500,646 S**

James W. Riley, Jr., Esq.
Indiana Bar # 6073-49
Riley Bennett & Egloff, LLP
141 East Washington Street, Fourth Floor
Indianapolis, Indiana  46204
Phone: (317) 636-8000
Fax: (317) 955-2158
JRiley@rbelaw.com

John M. Bowler
Georgia Bar # 071770
Troutman Sanders LLP
600 Peachtree St NE, Suite 5200
Atlanta, GA 30308-2216
Phone: (404) 885-3190
Fax: (404) 962-6513
john.bowler@troutmansanders.com
(Admitted Pro Hac Vice)

**Attorneys for Defendants Balkamp Inc., Genuine Parts
Company, and National Automotive Parts Association**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................... 1

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE.......................... 1

    A.    The Parties and The Pleadings................................................... 1

    B.    The '646 Patent and Pa Zee Grip Extension ............................. 2

    C.    The Prior Art .............................................................................. 3

    D.    Defendants' Accused Product..................................................... 7

    E.    Plaintiff's Infringement Contentions ........................................ 7

ARGUMENT ..................................................................................................... 8

I.       SUMMARY JUDGMENT STANDARD ........................................... 8

II.     COURTS CAN, AND DO, GRANT SUMMARY JUDGMENT IN DESIGN PATENT CASES ................................................................. 9

III.    APPLICABLE BURDEN OF PERSUASION ..................................... 9

IV.   APPLICABLE ANALYSIS FOR DESIGN PATENT INFRINGEMENT......... 10

    A.    Claim Meaning and Scope ....................................................... 10

    B.    The Ordinary Observer—Substantial Similarity Test.............. 12

    C.    Design Patent Infringement Requires Deceptive Similarity.................... 14

V.     THE '646 PATENT IS NOT INFRINGED BY DEFENDANTS' PRODUCT.................................................................................... 15

    A.    Claim Construction .................................................................. 15

    B.    The Spinning Impact Extensions are Not Deceptively Similar to the Overall Ornamental Impression Created by the '646 Patent Tool Handle Design ................................................................. 19

    C.    The Shape and Dimensions of the Patent and Accused Designs are Sufficiently Distinct Such That an Ordinary Observer Would not be Deceived Into Purchasing One Believing it to be the Other .............. 22

    D.    The Prior Art Confirms the Spinning Impact Extension Does Not Infringe..................................................................................... 23

    E.    Plaintiff's Pa-Zee Grip Tool Handle Product Further Highlights The Lack of Substantial Similarity to Defendants' Product. .................. 24

    F.    Plaintiff's anecdotal "interview" evidence is de minimis and too flawed to create a genuine issue of material fact ..................................... 24

VI.   THE '646 PATENT IS INVALID AS ANTICIPATED AND OBVIOUS ......... 26

    A.    The '646 Patent is Invalid Because it is Anticipated................ 26

          1.    The Test for Invalidity Based on Anticipation ............ 26

## TABLE OF CONTENTS
(continued)

**Page**

2.     Applying the Ordinary Observer Test Shows Anticipation ......... 27

     a.     The '646 patent is Anticipated by Kress and its commercial embodiment the M-110 Extension Handle ........................................................................ 27

     b.     The '646 patent is Anticipated by Wolfe ......................... 28

B.     The '646 Patent is Invalid as Obvious ...................................................... 29

1.     The Test for Invalidity of a Patent Based on Obviousness .......... 29

2.     Analysis of Obviousness of the '646 Patent in Light of the Prior Art ............................................................................. 31

     a.     First Analysis of Obviousness: It Would Have Been Obvious to One of Ordinary Skill in the Art to Modify Kress ................................................................. 32

     b.     Second Analysis of Obviousness: It Would Have Been Obvious to One of Ordinary Skill in the Art to Modify Kress with Wolfe ................................. 32

     c.     Third Analysis of Obviousness: It Would Have Been Obvious to One of Ordinary Skill in the Art to Modify Wolfe with Kress ................................. 33

     d.     Fourth Analysis of Obviousness: It Would Have Been Obvious to One of Ordinary Skill in the Art to Modify White with Kress................................. 34

3.     There are no Secondary, Objective Factors To Rebut Obviousness ...................................................................... 35

CONCLUSION ............................................................................................. 35

CERTIFICATE OF SERVICE ....................................................................... 36

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Amgen Inc. v. Hoechst Marion Roussel, Inc.,
   314 F.3d 1313 (Fed. Cir. 2003)..................................................................................30

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242 (1986).................................................................................................12

Applied Materials v. Advanced Semiconductor Materials, Inc.,
   98 F.3d 1563 (Fed. Cir. 1996)..................................................................................30

Arminak and Assocs., Inc. v. Saint-Gobain Calmar, Inc.,
   501 F.3d 1314 (Fed. Cir. 2007)...............................................................14, 20, 22, 23

Avia Group Int'l v. L.A. Gear Cal. Inc.,
   853 F.2d 1557 (Fed. Cir. 1988)...........................................................................12, 16

Braun, Inc. v. Dynamics Corp. of Am.,
   975 F.2d 815 (Fed. Cir. 1992)............................................................................18, 29

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986).................................................................................................12

Competitive Edge, Inc. v. Staples, Inc.,
   763 F. Supp.2d 997 (N.D. Ill. 2010) aff'd without opinion, 412 Fed. Appx. 304 (Fed.
   Cir. 2011) ........................................................................................................18, 23

Contessa Food Prods., Inc. v. Conagra, Inc.,
   282 F.3d 1370 (Fed. Cir. 2002)...........................................................................17, 19

Crocs, Inc. v. Int'l Trade Comm'n,
   598 F.3d 1294 (Fed. Cir. 2010)......................................................................16, 18, 23

Durling v. Spectrum Furniture Co., Inc.,
   101 F.3d 100 (Fed. Cir. 1996).....................................................................33, 34, 35

Egyptian Goddess, Inc. v. Swisa, Inc.,
   543 F.3d 665 (Fed. Cir. 2008)........................................................................... passim

Elmer v. ICC Fabricating, Inc.,
   67 F.3d 1571 (Fed. Cir. 1995).............................................................................14, 15

Fanimation, Inc. v. Dan's Fan City, Inc.,
   Case No. 1:08-cv-1071-TWP-WGH, 2010 U.S. Dist. LEXIS 134526 (S.D. Ind. Dec.
   16, 2010) (Pratt, J.), aff'd, 444 F. App'x 449 (Fed. Cir. 2011)........................... passim

*Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*,
162 F.3d 1113 (Fed. Cir. 1998)........................................................................16, 19

*Gorham Co. v. White*,
81 U.S. 511, 20 L.Ed. 731 (1871) .................................................................. passim

*Graham v. John Deere Co.*,
383 U.S. 1 (1966).......................................................................................33, 39

*Grogan v. Garner*,
498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ...........................................13

*High Point Design LLC v. Buyer's Direct, Inc.*,
730 F.3d 1301, 108 U.S.P.Q.2d 1183 (Fed. Cir. 2013) .............................30, 34, 35

*In re Blum*,
374 F.2d 904 (C.C.P.A. 1967) ......................................................................14

*In re Mann*,
861 F.2d 1581 (Fed. Cir. 1988).....................................................................14

*Int'l Seaway Trading Corp. v. Walgreens Corp.*,
589 F.3d 1233 (Fed. Cir. 2009).............................................................16, 30, 31

*Keystone Retaining Wall Sys., Inc. v. Westrock, Inc.*,
997 F.2d 1444 (Fed. Cir. 1993).....................................................................17

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
988 F.2d 1117 (Fed. Cir. 1993).............................................................18, 20, 28

*Lee v. Dayton-Hudson Corp.*,
838 F.2d 1186 (Fed. Cir. 1988).....................................................................18, 28

*Microsoft v. i4i Ltd. P'ship*,
131 S.Ct. 2238, 564 U.S. __ (2011) ...............................................................14, 29

*Minka Lighting, Inc. v. Craftmade Int'l, Inc.*,
No. 3-00-CV-0888-G, 2002 U.S. Dist LEXIS 8693 (N.D. Tex. May 16, 2002), *aff'd*,
93 Fed. Appx. 214 (Fed Cir. 2004) ...............................................................29

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
122 F.3d 1396 (Fed. Cir. 1997)..................................................................... passim

*Power Mosfet Techs., LLC v. Siemens AG*,
378 F.3d 1396 (Fed. Cir. 2004).....................................................................30

*Puritan Bennett Corp. v. Penox Techs., Inc.*,
IP 02-0762-C-M/S, 2004 U.S. Dist. LEXIS 6896 (S.D. Ind. Mar. 2, 2004)
(McKinney, J.), *aff'd*, 2005 U.S. App. LEXIS 2757 (Fed. Cir., Feb. 17, 2005)...............13, 29

*Richardson v. Stanley Works, Inc.,*
    597 F.3d 1288 (Fed. Cir. 2010) ................................................................... passim

*Schoenhaus v. Jay,*
    440 F.3d 1354 (Fed. Cir. 2006) ............................................................................14

*Southwall Techs., Inc. v. Cardinal IG Co.,*
    54 F.3d 1570 (Fed. Cir. 1995) ..............................................................................30

*Spotless Enters., Inc. v. A & E Prods. Group L.P.,*
    294 F. Supp.2d 322(E.D.N.Y. 2003) ....................................................................29

*Stumbo v. Eastman Outdoors, Inc.,*
    508 F.3d 1358 (Fed. Cir. 2007) ............................................................................14

*Tech. Licensing Corp. v. Videotek, Inc.,*
    545 F.3d 1316 (Fed. Cir. 2008) ............................................................................13

*TechSearch, L.L.C. v. Intel Corp.,*
    286 F.3d 1360 (Fed. Cir. 2002) ............................................................................13

*Titan Tire Corp. v. Case New Holland, Inc.,*
    566 F.3d 1372 (Fed. Cir. 2009) ............................................................................33

*Tokai Corp. v. Easton Enters., Inc.,*
    632 F.3d 1358 (Fed. Cir. 2011) ............................................................................13

*Unidynamics Corp. v. Automatic Prods. Int'l., Ltd.,*
    157 F.3d 1311 (Fed. Cir. 1998) ............................................................................17

*Unique Functional Prods., Inc. v. Mastercraft Boat Co., Inc.,*
    82 F. App'x 683 (Fed. Cir. 2003) .........................................................................23

**STATUTES**

35 U.S.C. § 102 ...........................................................................................5, 7, 9, 29

35 U.S.C. § 103 .......................................................................................33, 34, 37, 38

35 U.S.C. § 171 ...............................................................................................30, 31, 33

35 U.S.C. § 282 .............................................................................................................13

Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 ......................................5

**OTHER AUTHORITIES**

*Manual for Complex Litigation* § 11.493 (4th ed. 2004) ...........................................28

Fed. R. Civ. P. 56(c) .....................................................................................................12

## INTRODUCTION

This is a case about whether plaintiff's[1] U.S. Design Patent D500, 646 S (the "'646 patent"), titled "Tool Handle," is valid and infringed by defendants'[2] Spinning Impact Extension. The answer to both questions is "no." The patent tool handle which is used with socket wrench sets is rather unremarkable. It comprises functional, standard square left (female) and right (male) ends. Beyond the presence of these non-protectable functional features and a generally cylindrical body shape and handle with knurling which exist in numerous prior art references, the '646 patent and accused product designs look nothing alike.  When, as here, the prior art is crowded with similar tool handles that were widely available for decades before the '646 patent, the ordinary observer would make a more careful and discriminating comparison of the patent and accused product designs. The '646 patent is not infringed, since the ordinary observer would not find the patent design substantially similar to the accused product. The '646 patent is also invalid as both anticipated and obvious[3] in view of un-cited prior art – which discloses the '646 patent design – and is more relevant than the prior art the USPTO considered.

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

### A.    The Parties and The Pleadings

Plaintiff resides in Putnam, Connecticut.  Compl. (Doc. 1) at ¶ 1. He is listed as inventor and owner of the '646 patent.  *Id.* at ¶ 11 & Ex. A. Balkamp is an Indiana corporation and subsidiary of GPC.  Doc. 1 at ¶¶ 2, 5. It distributes automotive aftermarket products in the NAPA

---

[1] The plaintiff is Kenneth Butler, Sr. ("Plaintiff").
[2] The defendants are Balkamp Inc. ("Balkamp"), National Automotive Parts Association ("NAPA"), and Genuine Parts Company ("GPC") (collectively "Defendants").
[3] Sections 102 and 103, which set out the requirements for novelty and obviousness, respectively, were replaced earlier this year with new provisions under the American Invents Act ("AIA"), Pub. L. No. 112-29, 125 Sta. 284 (2011), effective March 16, 2013. However, because the '646 patent has an effective priority date prior to March 16, 2013, the pre-AIA §§ 102 and 103.

-1-

Auto Parts System. Bowler Decl. at ¶ 2 & Ex. 2.[4] NAPA is a Michigan nonprofit corporation whose parent is also GPC.  Doc. 1 at ¶ 5; Answer (Doc. 12) at ¶ 4; Bowler Decl. at ¶ 3 & Ex.3-4. GPC is a Georgia corporation specializing in replacement parts for cars.  Doc. 1 at ¶ 4; Bowler Decl. at ¶ 4 & Exs. 5-6. Plaintiff filed his complaint on November 21, 2012, Doc. 1, and served it in late March, 2013. Doc. 8-10. On April 15, 2013, Defendants filed their answer denying infringement and asserting defenses including patent invalidity. Doc. 12.

**B.      The '646 Patent and Pa Zee Grip Extension**

The Patent Office granted the '646 patent on January 11, 2005. Doc. 1 at Ex. A, p. 1. The patent contains seven figures, a cover page that includes a short description of each figure, and a single claim which recites "[t]he ornamental design for a tool handle, as shown and described." *Id.* Five annotated '646 patent figures (Figs. 1-4, & 6) are shown below.



The parties agree the '646 patent drawings disclose the following features:

| Item | Description |
|------|-------------|
| 1 | Front (male) square drive or Front adaptor |
| 2 | Cylindrical extension shaft or Cylindrical front end portion |
| 3 | Tapered front end |
| 4 | Unknurled, reduced diameter front end or Untapered front end |
| 5 | Knurled handle or Knurled portion of the handle |
| 6 | Beveled or tapered back end |
| 7 | Rear (female) square drive or Square back adaptor |

---

[4]  *See* Declaration of John M. Bowler, Esq. filed herewith.

Doc. 29 (Joint Claim Construction Statement ["JCCS"]) at §§ B-C, pp. 2-3. The parties further agree that features 1 and 7 are purely functional, whereas the remaining features 2 - 6 should be regarded as ornamental and part of the '646 patent design. *Id.* Finally, Plaintiff claims his commercially sold "'PA ZEE GRIP EXTENSION' is an exact replica of the '646 design patent and thus practices the '646 patent." Bowler Decl. at ¶ 25, Ex. 19 ¶ 6, p. 3.

C.     **The Prior Art**

Prior art constitutes information publicly available before a given date that might be relevant to the '646 patent's claim of originality.[5] Plaintiff filed the '646 patent application on May 21, 2003 as a division of his earlier utility patent application, Ser. No. 08/421,220, also titled "Tool Handle." Doc. 1 at Ex. A ('646 patent, cover page). The utility patent application, filed on April 13, 1995, went abandoned for failure to respond to an Office Action. *Id.*; Bowler Decl. at ¶ 7 & Ex. 9. Plaintiff claims he is entitled to the earlier effective filing date of April 13, 1995.[6] Bowler Decl. at Ex. 19, ¶ 5, p. 3. Thus, if the prior art described the '646 patent invention before that date, the patent claim on that invention is not valid.

The scope and content of the prior art for the '646 patent is not in dispute. It includes a mature field of tool designs depicted in patents, publications, and designs embodied in products commercially available in this country before April 13, 1995. Kemnitzer Decl. at ¶¶ 35-41, 45-74; Bowler Decl. at Exs. 10-17.[7] During prosecution, the Patent Office cited three U.S. design patents, shown below, which disclose one or more of: a generally cylindrical tool handle body; a

---

[5]  Prior art is defined in pre-AIA § 102, which (a) denies patentability to inventions that were "known or used by others" in this country or "patented" or described in a printed publication in this or a foreign country, before the invention" by the applicant, while § 102(b) denies patentability where the invention was "patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent" in the U.S.  35 U.S.C. § 102 (a)-(b).

[6]  The "priority date" is the date used to establish the novelty and/or obviousness of a particular invention relative to other art. A patentee's priority date is initially the date when the application is filed with the Patent Office, although the date may be pushed further back.

[7]  Professor Ronald Kemnitzer has submitted two declarations—the first on invalidity dated 11-25-2013 ("Kemnitzer Decl. 1"), and the second on non-infringement dated 12-23-2013 ("Sec. Kemnitzer Decl.").

male drive; an extension shaft; a tapered portion; a knurled handle; a beveled or rounded left end; and a female square drive:



**D307,703**          **D319,562**          **D475,589**

Doc. 1 at Ex. A, p. 1 ('646 patent cover page); Bowler Decl. at ¶ 8 & Ex. 10; Kemnitzer Decl. at ¶ 35. The Patent Office also cited five U.S. utility patents, shown below, which reveal one or more of: a generally cylindrical body; a left end with female drive; a right end with male drive; a reduced diameter portion; and an extension shaft (*Id.*):



**5,033,337**          **5,680,800**          **5,752,418**



5,813,296                          6,604,441

The eligible prior art also includes the six uncited tool handle references, identified and shown

below, that were _not_ before the Patent Office. These references disclose one or more of a

generally cylindrical main body; a blunt left end with a female square drive; knurling along the

entire length of the handle; a chamfered left edge; and an unknurled extension housing on the

right end which includes a reduced diameter cylindrical portion, a tapered portion, and a short

extension with a male square drive. (Kemnitzer Decl. at ¶¶ 38-41):

1.   U.S. Pat. No. 2,071,543, entitled "Revolving Grip Tool," filed
September 14, 1935 and issued February 23, 1937 ("_Kress_").[8]

2.   Williams M-110 Extension Handle, which is a commercial embodiment
of _Kress_, publicly available as early as 1955 ("_M-110_").[9]

3.   U.S. Pat. No. 3,650,165, entitled "Ratchet Tool," filed November 21,
1969 and issued March 21, 1972 ("_Wolfe_").[10]

4.   U.S. Pat. No. 3,575,069, entitled "Ratchet and Speed Wrench
Combination," filed July 29, 1969 and issued April 13, 1971
("_White_").[11]

---

[8] Issued fifty-eight years before April, 1995, _Kress_ is prior art under § 102(a)-(b).  Kemnitzer Decl. at ¶ 46 & Ex. 4.
[9] Having been in public use and on sale in the U.S. forty years before April, 1995, the _M-110_ is prior art under §
102(b).  _Id._ at ¶ 48 & Ex. 5.
[10] Issued over 23 years before April, 1995, _Wolfe_ is prior art under § 102 (a)-(b).  _Id._ at ¶ 53 & Ex. 6.
[11] Issued twenty-four years before April, 1995, _White_ is prior art under §102 (a)-(b).  _Id._ at ¶ 71 & Ex. 7.

5.  Snap-On® SG-6 ("SG-6"), which was described in a printed publication and on sale in this country since at least 1930.[12]

6.  U.S. Pat. No. 1,775,402, entitled "Wrench Outfit," filed January 26, 1925 and issued September 9, 1930 ("*Mandl*").[13]



*Kress*         *M-110*

*Wolfe*         *White*

*Snap-On SG-6*         *Mandl- FIG 2a*

---

[12] Having been in a published catalog and on sale in the U.S. sixty-five years before April, 1995, the Snap-On SG-6 is prior art under §102 (a)-(b). Sec. Kemnitzer Decl. at ¶ 58 & Ex. 9; Bowler Decl. at ¶¶ 18-19 & Exs. 12-13.

[13] Issued sixty-five years before April, 1995, *Mandl* is prior art under §102 (a)-(b).  Bowler Decl. at ¶ 20 & Ex. 4.




**D.      Defendants' Accused Product**

Defendants' Spinning Impact Extension comes in three sizes, shown below. Doc. 1 at ¶ 14; Bowler Decl. at ¶ 24 & Ex. 18; *see also* Notice of Manual Filing.[14]



3/8" Drive - 7" Length (Part #61-3507)

1/2" Drive - 8" Length (Part #61-5808)

3/4" Drive – 10" Length (Part # 61-6725a)

**E.      Plaintiff's Infringement Contentions**

The allegations in Plaintiff's complaint at paragraphs 14, 21-22, 28-29 (Doc. 1), which are mirrored in his preliminary infringement contentions and interrogatory answers, constitute his only effort to identify how his '646 patent claim allegedly reads on Defendants' product. Rather than providing reasoned explanations for his infringement theory, however, Plaintiff has provided only conclusory *ipse dixit,* reciting mere case law verbiage as to why the accused

---

[14]  If the Court wishes to examine enlarged versions of the Spinning Impact Extensions, photographs taken by Professor Kemnitzer of each patent view are attached as composite **Exhibit 8** to his Non-Infringement Declaration. Sec. Kemnitzer Decl. at Ex. 8. Physical samples of the Spinning Impact Extensions are also being filed separately herewith under a **Notice of Manual Filing** for the Court's consideration.

product allegedly meets the claim limitations of the '646 patent, and nothing more. *Id.* Plaintiff's preliminary infringement contentions, served on August 1, 2013, did not provide a claim chart as required by the Court's Case Management Plan, Section III.C.3 (Doc. 20); Bowler Decl. at Ex. 19, ¶ 3, pp. 2-3. They also did not articulate the factual basis (as opposed to mere conclusions) for his infringement assertion. *Id.* Similarly, Plaintiff's response to Defendants' first interrogatory gave a formulaic recitation of design patent case law without factual enhancement of his infringement theory. Bowler Decl. at Ex. 20 at pp.4-6. Plaintiff asserted the patent and accused designs have "striking similarity" as allegedly borne out by his informal polling of a handful of consumers of auto repair parts. *Id.* at p. 4. He also identified three features he believes are embodied in the patent and accused product: a "tapered driving end," a "blunt driven end," and a "knurled grip portion." *Id.* at p. 5. Each feature is either *not* found in the accused product, or is not protectable because it is a functional feature and/or exists in the prior art.

## ARGUMENT

### I.    SUMMARY JUDGMENT STANDARD

Summary judgment will be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Under Rule 56(c), summary judgment shall be rendered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The mere existence of some alleged factual dispute will not defeat a properly supported motion. 477 U.S. at 247-48. The moving party need not disprove matters on which the non-moving party will have the burden of proof at trial.  *Id.* at 322.

## II.   COURTS CAN, AND DO, GRANT SUMMARY JUDGMENT IN DESIGN PATENT CASES

The Federal Circuit "has repeatedly emphasized that summary judgment is as appropriate in a patent case as in any other." *Avia Group Int'l v. L.A. Gear Cal. Inc.*, 853 F.2d 1557, 1561 (Fed. Cir. 1988) (affirming grant of summary judgment in design patent case), *abrogated on other grounds by Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008). Where, as here, significant visual differences exist between the asserted patent and accused product, summary judgment can and should be granted. Indeed, in *Egyptian Goddess,* the Federal Circuit affirmed the grant of summary judgment as it has done many other times. 543 F.3d at 683.[15] This District Court, too, has granted summary judgments of non-infringement in design patent cases that were affirmed on appeal. *See Fanimation, Inc. v. Dan's Fan City, Inc.*, Case No. 1:08-cv-1071-TWP-WGH, 2010 U.S. Dist. LEXIS 134526 (S.D. Ind. Dec. 16, 2010) (Pratt, J.), *aff'd*, 444 F. App'x 449 (Fed. Cir. 2011) (per curium); *Puritan Bennett Corp. v. Penox Techs., Inc.*, IP 02-0762-C-M/S, 2004 U.S. Dist. LEXIS 6896 (S.D. Ind. Mar. 2, 2004) (McKinney, J.), *aff'd*, 2005 U.S. App. LEXIS 2757 (Fed. Cir., Feb. 17, 2005). As is apparent from these cases, certain patent actions should not make their way to a jury. This is such a case.

## III.   APPLICABLE BURDEN OF PERSUASION

The burden of proof, by a preponderance of the evidence, falls on the patent holder asserting infringement. *Egyptian Goddess*, 543 F.3d at 679. Preponderance of the evidence is established where the evidenced weighs, however slightly, in favor of one party over the other. *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

---

[15]  Summary judgment of non-infringement is appropriate where: 1) "only one conclusion as to infringement could be reached by a reasonable jury;" or 2) "the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial." *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002).

A patent is presumed valid. 35 U.S.C. § 282. The burden of establishing a patent's

invalidity rests on the party asserting invalidity by clear and convincing evidence. *Tech.*

*Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008) (affirming district

court's finding of invalidity for <u>anticipation</u>); *Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358,

1367 (Fed. Cir. 2011) (affirming summary judgment of invalidity for <u>obviousness</u>). "New

evidence" of invalidity likely carries "more weight" than evidence that the Patent Office had

previously considered and rejected. *Microsoft v. i4i Ltd. P'ship*, 131 S.Ct. 2238, 2251, 564 U.S.

__ (2011) ("[I]f the PTO did not have all material facts before it, its considered judgment may

lose significant force . . . . clear and convincing evidence may be easier to sustain.").

## IV.   APPLICABLE ANALYSIS FOR DESIGN PATENT INFRINGEMENT

### A.   Claim Meaning and Scope[16]

Design patents protect only the novel, non-functional aspects of the ornamental design.

*OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). They "have almost

no scope." *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988). Design patents have only a single

claim "limited to what is shown in the application drawings." *Id.*; *Elmer v. ICC Fabricating,*

*Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995) (holding patentee "effectively limited the scope of its

patent claim by including [vertical ribs and upper protrusion] features in it."); *Fanimation*, 2010

U.S. Dist. LEXIS 134526, at * 4 ("a design patent is defined by the content of its drawing").

Everything shown in solid outline is material to the patented design.  *In re Blum*, 374 F.2d 904,

907 (C.C.P.A. 1967). The scope of patent protection is further limited if there are many prior

---

[16]  This Court can rule on claim construction issues within the context of this summary judgment motion with or without a separate *Markman* hearing. *See, e.g., Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358 (Fed. Cir. 2007) (affirming summary judgment entered without a *Markman* hearing); *Schoenhaus v. Jay*, 440 F.3d 1354, 1356 (Fed. Cir. 2006) (noting no separate *Markman* hearing was held, but affirming district court which construed claims "in a carefully-crafted summary judgment opinion).

designs similar to the patented design. *Egyptian Goddess*, 543 F.3d at 670; *Fanimation*, 2010 U.S. Dist. LEXIS 134526, at * 5-6.

In construing a design patent claim, its scope is properly limited to its "overall ornamental visual impression" and not its "broader general design concept." *OddzOn*, 122 F.3d at 1405 (finding district court "carefully noted the ornamental features that produced the overall 'rocket-like' appearance of the design"); *Arminak and Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1321 (Fed. Cir. 2007) ("The district court's meticulous and accurate description of [all figures] of each of [the] patents-in-suit did not constitute error . . . . [and] demonstrated the proper consideration of the claimed designs as a whole."); *Fanimation*, 2010 U.S. Dist. LEXIS 134526, at * 4 ("the proper construction of a design patent focuses on the overall visual impression of its ornamental, novel features."). The illustration in the '646 patent drawings is the best description of what is claimed. *Egyptian Goddess,* 543 F.3d at 679.

The Federal Circuit has cautioned against, but not banned, the practice of providing detailed verbal descriptions. *Id.* at 679-80. The Federal Circuit has further confirmed it is important for a district court to distinguish between the ornamental and functional features of the claimed design. *Id.* (citing *OddzOn*, 122 F.3d at 1405). The functional aspects of the '646 patent design must be "factored out." *Richardson v. Stanley Works, Inc.,* 597 F.3d 1288, 1293 (Fed. Cir. 2010). The Federal Circuit has also recognized that a district court may wish to describe certain features of the claimed design and the prior art to explain its own analysis. *Egyptian Goddess*, 543 F.3d at 608; *Fanimation*, 2010 U.S. Dist. LEXIS 134526, at * 4 ("a court need not issue a detailed verbal description of the claimed designs, unless it is necessary or helpful."). Thus, this Court has discretion to offer a verbal description of the '646 patent design for purposes of its infringement analysis, but it may instead rely on the actual illustrations set out in the patent

instead.[17] Whatever way the Court chooses to construe the '646 patent claim will lead to the same result: the accused product does not infringe.

### B.        The Ordinary Observer—Substantial Similarity Test

Once a design patent's claim is properly construed, it "must be compared to the accused design to determine whether there has been infringement." *Elmer*, 67 F.3d at 1577. The sole test for determining design patent infringement is the "ordinary observer" test. *Egyptian Goddess*, 543 F.3d at 678. Two designs are substantially similar if the ordinary observer, familiar with the prior art and giving such attention as an ordinary observer usually gives, would be deceived into thinking that the accused product was the same as the patented design. *Id.* at 672, 677, 681.

The hypothetical ordinary observer is the purchaser of the accused product, not someone who has never seen the type of tool handle the patent describes. *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1117 (Fed. Cir. 1998). The parties agree the ordinary observer would be familiar with ratchets, sockets, and prior art tool handles, already own at least one socket set, and be purchasing this product as a "specialized accessory." Bowler Decl. at Ex. 20, pp. 6-7 (Pl.'s Resp. Interrog. # 2); Kemnitzer Decl. at ¶ 32. Thus, this tool handle is generally not an impulse purchase, but one the ordinary purchaser knows they want before encountering it at the auto parts or hardware store. While the "ordinary observer" is not an "expert," the courts, including the Federal Circuit, have allowed the use of expert testimony in support of motions for summary judgment. *See Egyptian Goddess,* 543 F.3d at 681 (expert testimony from both parties considered as to whether the ordinary observer would be deceived into purchasing accused product thinking it to be patented product); *Avia Group Int'l,* 853 F.2d at 1565 (grant of summary judgment affirmed where lower court considered expert's declaration).

---

[17] *But see*, *infra*, at Section VI. The district court must include sufficient detail to a verbal description of the claimed design for purposes of the invalidity analysis.

Under the ordinary observer test, individual features are first analyzed in order to determine whether the patented design, accused product, and/or the prior art have the same overall visual effect.[18] *Int'l Seaway Trading Corp. v. Walgreens Corp.,* 589 F.3d 1233, 1240 (Fed. Cir. 2009). After completing a side-by-side comparison of the design's "focal points," the courts then consider the overall visual effect given by the claimed design. *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1306 (Fed. Cir. 2010). All the asserted patent's drawing figures must be considered in the determination of infringement. *Keystone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993); *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1378 (Fed. Cir. 2002).

The ordinary observer "must be deceived by the features common to the claimed and accused designs that are ornamental, not functional." *Unidynamics Corp. v. Automatic Prods. Int'l., Ltd.*, 157 F.3d 1311, 1323 (Fed. Cir. 1998). Further, the ordinary observer must "view the differences between the patented design and the accused product *in the context of the prior art*" such that "the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that *differ from the prior art*." *Egyptian Goddess*, 543 F.3d at 676 (emphasis added). Once the prior art is considered, the hypothetical ordinary observer becomes more capable of distinguishing between the patented and accused designs. "[W]hen the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Id.*

---

[18] In *Egyptian Goddess*, in determining whether the design of a fingernail buffer was infringed, the Federal Circuit provided examples of individual features a court could properly consider under the ordinary observer test. The Court ultimately ruled there was no infringement even though "the general shape of the accused nail buffer at issue . . . is the same as that of the patented buffer design." 543 F.3d at 680. Thus, the Court affirmed the grant of summary judgment in the defendant's favor because "no reasonable fact-finder could find that [plaintiff] met its burden of showing, by a preponderance of the evidence, that an ordinary observer, taking into account the prior art, would believe the accused design to be the same as the patented design." *Id.* at 682.

Irrespective of the context of the prior art, the Federal Circuit, in *Egyptian Goddess*, recognized that "[i]n some instances, the claimed design and the accused design will be sufficiently distinct that it will be [cl]ear **without more** that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer, as required[.]" 543 F.3d at 678 (emphasis added). Thus, as a threshold matter, a determination of non-infringement can be made without resort to considering the prior art if the appearance of the accused product is not substantially the same as the patented design. This is the case at hand.

### C.     Design Patent Infringement Requires Deceptive Similarity

Infringement requires that an ordinary observer be "<u>deceived</u>" into believing the [accused design] is the same as the patented design "'inducing him to purchase one supposing it to be the other.'" *Egyptian Goddess*, 543 F.3d at 681, 683 (citing *Gorham Co. v. White*, 81 U.S. 511, 528, 20 L.Ed. 731 (1871)). Although design patent infringement "can be found for a design that is not identical to the patented design," *Braun, Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 820 (Fed. Cir. 1992), the cases in which the Federal Circuit has sustained a finding of design infringement have involved a high degree of similarity. *See Crocs,* 598 F.3d at 1306 ("In one [side-by-side] comparison after another, the shoes appear nearly identical"); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1125-26 (Fed. Cir. 1993) (accused shoes were "almost a direct copy."); *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1190 (Fed. Cir. 1988) ("designs must be equivalent in their ornamental . . . . aspects.").

In contrast, the following are examples of cases where the Federal Circuit has affirmed district court judgments that held accused product did **<u>not</u>** infringe the design patent in suit:



**Patented Design**     ***** **Accused Design**

*Fanimation, Inc. v. Dan's Fan City, Inc.*, Case No. 1:08-cv-1071-TWP-WGH, 2010 U.S. Dist. LEXIS 134526 (S.D. Ind. Dec. 16, 2010) (Pratt, J.), *aff'd*, 444 F. App'x 449 (Fed. Cir. 2011) (ceiling fan)

*Competitive Edge, Inc. v. Staples, Inc.*, 763 F. Supp.2d 997 (N.D. Ill. 2010) *aff'd without opinion,* 412 Fed. Appx. 304 (Fed. Cir. 2011) (calculator design)

*OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396 (Fed. Cir. 1997) (throw toy)

*Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113 (Fed. Cir. 1995) (tire design)

## V.    THE '646 PATENT IS NOT INFRINGED BY DEFENDANTS' PRODUCT

### A.    Claim Construction

The differences between the Spinning Impact Extension and the '646 patent design are plain, obvious, and extensive. That determination is even more apparent when viewed through the lens of proper claim construction and functionality considerations. The '646 patent claim,

which resides in the patent drawings, delineates Plaintiff's right to exclude. Three representative
figures from the '646 patent are shown below:



**Fig. 1**
**Perspective View of Tool Handle**          **Fig. 2**          **Fig. 4**
                                   **Left End (Female)**   **Right End (Male)**

Plaintiff's patent figures use only solid lines and cross hatching depicting claimed boundary lines
and knurling, which are part of the claimed invention. *Contessa Food Prods.*, 282 F.3d at 1378.
If the metes and bounds of the '646 patent claim did not reside in its seven lined drawings, then
the public would not understand how to avoid infringement, defeating the public notice of patent
claims.

The '646 patent design also has functional components—a front (male) square drive (*see*
Fig. 4, above), and a rear (female) square drive (*see* Fig. 2, above). The parties agree these
square ends are purely functional and exist only to connect the tool to standard square drive
socket drivers (female square drive to the left end, and sockets or extensions on the right end).
Doc. 29 (JCCS) at § B, p. 2 Items 1, 7; Sec. Kemnitzer Decl. at ¶ 34. The functional square drive
ends must be "factored out." *Richardson*, 597 F.3d at 1295. The '646 patent design also has a
handle with knurling. *See* Fig. 1, above. This handle is functional and necessary, as the user
needs a place to grasp the tool for use. However, because the handle design is not only the result
of functional necessity but also of decorative design choices (*i.e.*, diameter size, length, amount
of surface area covered by knurling), it is an ornamental part of the '646 patent claim. Sec.

Kemnitzer Decl. at ¶ 35; *L.A. Gear, Inc.*, 988 F.2d at 1123 ("When there are several ways to achieve the function of an article of manufacture, the design . . . is more likely to serve a primarily ornamental purpose.").

This leads to the wholly legal question for the Court: What are the visual ornamental or aesthetic aspects embodied in the '646 patent design as a whole? Plaintiff's design can only be interpreted as covering the overall ornamental design disclosed, which includes the specific ornamental design characteristics or focal points described below in paragraphs (1) through (6). *OddzOn*, 122 F.3d at 140; *Arminak*, 501 F.3d at 1321.

(1)     <u>Cylindrical tool handle.</u>  The '646 patent design includes (i) a larger diameter main cylindrical body that has a functional blunt end with a female square drive on the left end, and (ii) a smaller diameter extension housing on the right end, shown below. (Figs. 1, 3, 5-7).

**From Fig. 3, '646 patent**



(2)     <u>Knurled handle.</u>  The main cylindrical body is knurled <u>along its entire length,</u> as shown below. (Figs. 1, 3, 5-7).



**Left End**          **From FIG. 1,'646 patent**          **Right End**

(3)     Chamfered back end.  The main cylindrical body includes a prominent chamfered (or symmetrical sloping, or beveled) edge on its left end, as shown below. (Figs. 1, 2-3, 5-7).





**Left End—From FIG. 1, '646 patent**                    **Left End—From FIG. 6, '646 patent**

(4)     Extension Housing.  The extension housing includes a reduced diameter cylindrical portion on the left, a tapered portion in the middle, and a short extension with a functional male square drive on the right, as shown below. (Figs. 1, 3-7).

**Right End**                                        **Right End**







**From FIG. 1**                                        **From FIG. 7**

(5)     Tapered front end.  The tapered portion of the extension housing reduces in diameter from the diameter of the reduced cylindrical portion on the left to the diameter of the short extension on the right, as shown below. (Figs. 1, 3, 5-7).

**Right End**                                        **Right End**





**From FIG. 1, '646 patent**                            **From FIG. 7, '646 patent**

(6)     <u>Unknurled, reduced diameter front end</u>.  The reduced diameter right (front) end is unknurled, as shown below. (Figs. 1, 3, 5-7).



**From FIG. 5**

Defendants request the Court to adopt the "focal point" features identified above as being the significant visual ornamental characteristics of the '646 patent design as a whole. *See OddzOn*, 122 F.3d at 1405; *Arminak*, 501 F.3d at 1321. The prior art is crowded with designs of the same type of tool handle, having similar cylindrical shapes and features including a knurled handle, an unknurled extension housing, a reduced diameter cylindrical portion, a tapered front end portion, and a chamfered left end. *See* Sec. Kemnitzer Decl. at ¶¶ 43-59. Thus, "the scope of protection of the patent [is] limited to a 'narrow range.'" *Egyptian Goddess*, 543 F.3d at 676.

**B.     The Spinning Impact Extensions are Not Deceptively Similar to the Overall Ornamental Impression Created by the '646 Patent Tool Handle Design**

Consideration of a side-by-side comparison of all seven drawings of the '646 patent design and the Spinning Impact Extension in their entirety establishes that the overall effect of the Spinning Impact Extension is sufficiently distinct from the '646 patent claim. When taken as a whole, shown below, it is clear without more that the two designs do not look substantially the same to the ordinary observer.[19] *See Competitive Edge, Inc. v. Staples, Inc.*, 763 F. Supp.2d 997,

---

[19]  *See Richardson*, 597 F.3d at 1296 ("In a side-by-side comparison with the '167 patent design, the overall effect of this streamlined theme makes the Fubar tools significantly different from Richardson's design."); *Crocs*, 598 F.3d at 1304 ("The proper comparison requires a side-by-side view of the drawings of the '789 patent design and the accused products"); *Arminak & Assocs.*, 501 F.3d at 1327 ("Calmar also implies that it was improper for the district court to do a detailed side-by-side comparison between the patented design and the accused design.  Calmar cites no authority for this contention because there is none."); *Unique Functional Prods., Inc. v. Mastercraft Boat Co., Inc.*, 82 F. App'x 683, 690 (Fed. Cir. 2003) (nonprecedential) ("[T]he Reliable coupler has a rounded nose . . . whereas, as previously illustrated, the '777 patent requires a boxy and blunt nose . . . . the Reliable coupler's nose. . . slopes sharply downwardly, rather than having a substantially square- or block-shaped face as required by the '777 patent.").

1012 (N.D. Ill. 2010) ("there is no need to look to the prior art, because" the two calculator designs were "sufficiently distinct"), *aff'd without opinion,* 412 Fed. Appx. 304 (Fed. Cir. 2011).



**'646 Patent – FIG. 1**                    **Spinning Impact Extension**

The Spinning Impact Extension does not infringe the '646 patent because it creates a very different overall visual impression since it lacks the significant focal point ornamental features of that patent, as shown below. Consequently, an "ordinary observer" would <u>not</u> confuse the two:

**A main cylindrical body that is knurled along its entire length (<u>features 1 and 4 above</u>). Instead, the accused product handle is not knurled across its entire length, but has two prominent unknurled end portions, each of which contains a distinct unknurled channel, as shown below:**



**'646 Patent – From FIG. 1**                    **Spinning Impact Extension**

**A beveled or chamfered edge on the handle's left end (<u>feature 3</u> above). The accused product handle's left end, as shown below, instead is straight-edged without a chamfer and has an extension protruding therefrom:**





**'646 Patent – From FIG. 6**          **Spinning Impact Extension**

An extension housing of the main cylindrical body which includes a reduced diameter cylindrical portion, a tapered portion, and a short extension (<u>features 1(ii) and 4 above</u>). The accused product instead is missing an extension housing having any of these features, as shown below:





**'646 Patent – From FIG. 7**          **Spinning Impact Extension**

A tapered end portion which reduces in diameter from the diameter of the reduced cylindrical portion on the left end to the diameter of the short extension on the right end (<u>feature 3 above</u>). Instead, as shown below, the accused product's handle has a blunt, straight-edged right end with no taper.





**'646 Patent – From FIG. 7**          **Spinning Impact Extension**

As is readily apparent, above, the only similarities between the '646 patent and Spinning Impact Extension, also found in the prior art, are their square drive ends. These two clearly functional elements cannot support a finding of infringement. *OddzOn*, 122 F.3d at 1405. Thus, the ordinary observer would not be deceived into believing the Spinning Impact Extension is the same as the overall ornamental impression created by the '646 patent design.

### C.    The Shape and Dimensions of the Patent and Accused Designs are Sufficiently Distinct Such That an Ordinary Observer Would not be Deceived Into Purchasing One Believing it to be the Other.

An ordinary observer would also easily differentiate the Spinning Impact Extension from the '646 patent tool handle based on the distinct differences in the respective tool handles' overall proportions, shapes, profiles, and relative dimensions. Professor Kemnitzer has prepared a series of exhibits showing each view of the accused and patent designs in overlay comparison. *See* Sec. Kemnitzer Decl. at ¶¶ 54-56 & Ex. 8. The photos and silhouettes of the Spinning Impact Extension are accurately scaled when compared to the figures of the '646 patent. *Id.* at ¶ 54.



Common socket size.          Common overall length.          Common overall diameter.

The figure shown on the left, above, compares common socket size; the middle figure compares common overall length; and, the right figure compares common diameter of the main cylindrical housing. *Id.* at ¶ 55. The comparisons highlight many obvious differences between the Spinning Impact Extension and the '646 patent design. Using a common <u>socket size</u> (*e.g.*, 3/8" drive), for example, the '646 patent design is approximately twice the length and four times the volume of the Spinning Impact Extension. *Id.* at ¶ 56. Comparing by common <u>overall length</u> accentuates the fact that the Spinning Impact Extension does not have a tapered extension

housing, is much smaller in overall volume and diameter, and it comprises an extension with a cylindrical handle as opposed to being a cylindrical tool in and of itself. *Id.* Comparing a common <u>overall diameter</u> shows the '646 patent design is proportionally approximately three-quarters the overall length of the Spinning Impact Extension. *Id.* In sum, the Spinning Impact Extension does not resemble the design of the '646 patent to an ordinary observer.

### D.     The Prior Art Confirms the Spinning Impact Extension Does Not Infringe.

Each of the prior art references discussed in Section VI, *infra*, in the context of patent invalidity, can also be used to establish the Spinning Impact Extension does not infringe the '646 patent. *Egyptian Goddess*, 543 F.3d at 678; *Fanimation*, 2010 U.S. Dist. LEXIS 134526 at * 12 (noting "the prior art Islander appears to employ a blade shape far more similar to the *'450 patent* than the accused product. . . . . Finally, the Court's position is further fortified by reviewing the prior art Islander's overlapping fan blades."). Further, the uncited prior art Snap-On® SG-6, which was on sale in the U.S. as early as 1930, and the *Mandl* patent, issued in 1930, shown below, each discloses a design very similar to the Spinning Impact Extension.





**Snap-On® SG-6**                              **Mandl-FIG. 2a**

Both the SG-6 and *Mandl*, like the Spinning Impact Extension, disclose what is essentially an extension with a rotating collar. *See*, *e.g.*, *Mandl* at p. 2, ll. 85-100. The SG-6 and *Mandl* include a knurled main cylindrical body. The SG-6 also has a tapered right end. Sec. Kemnitzer Decl. at ¶ 59. The male end of the extension of both the SG-6 and *Mandl* protrudes from the right end and

ends with a male square drive. The left end of the extension of the SG-6 and *Mandl* protrudes

from the left end of the main cylindrical body and includes a female square drive. Given the

similarities between the SG-6 and Mandl on the one hand, and the Spinning Impact Extension on

the other, and the fact that the SG-6 and *Mandl* were disclosed over 65 years before the '646

patent, the Spinning Impact Extension could not infringe any valid '646 patent claim.

**E.    Plaintiff's Pa-Zee Grip Tool Handle Product Further Highlights The Lack of Substantial Similarity to Defendants' Product.[20]**

Plaintiff contends his commercially sold Pa-Zee Grip, shown below on the left, embodies

the claimed invention of the '646 patent. In fact, the '646 patent figures read on the Pa-Zee Grip,

| **Plaintiff's Pa-Zee Grip- Front View** | **Fig. 3 '646 Patent Compared to Pa-Zee Grip** |
|---|---|
|  |  |

as shown in the to-scale overlay created by Prof. Kemnitzer on the right, above. Sec. Kemnitzer

Decl. at ¶ 54 & Ex. 8. Plaintiff's and Defendants' commercial tools are nothing alike, unless you

extend Plaintiff's Pa-Zee Grip to its two functional square ends, which have no design patent

protection, and to all vaguely cylindrical tool handles that somewhere have knurling, regardless

of any other features of the device—which would cover numerous prior art tools shown herein.

**F.    Plaintiff's anecdotal "interview" evidence is *de minimis* and too flawed to create a genuine issue of material fact.**

Plaintiff relies on his anecdotal polling of a handful of customers comparing the parties'

product designs. Doc. 1 at ¶ 21; Bowler Decl. at Ex. 20, p. 15 (Pl.'s Resp. to Interrog. # 11). His

---

[20]  Although the design patent infringement analysis requires comparison of the claimed design with the accused articles, "[w]hen the patented design and the design of the article sold by the patentee are substantially the same, it is not error to compare the patentee's and the accused articles directly[.]" *L.A. Gear,* 988 F.2d at 1125-26; *see also Lee,* 838 F.2d at 1189.  "[I]ndeed, such comparison may facilitate application of the *Gorham* criterion of whether an ordinary purchaser would be deceived into thinking that one were the other . . . . No methodological error has been shown in this analysis."  *L.A. Gear,* 988 F.2d at 1125-26.

informal polling is too flawed to be admissible.[21] Survey evidence has not been well received by the courts in design patent cases for a number of reasons. First, design patent infringement can be decided simply by comparing the accused product to the patent design, without survey evidence. *Braun*, 975 F.2d at 821, 828 ("a jury, comprised of a sampling of ordinary observers, does not necessarily require empirical evidence as to whether ordinary observers would be deceived by an accused device's design."). Second, the ordinary observer is a hypothetical person who is assumed to be familiar with <u>all</u> prior art designs. *Egyptian Goddess*, 543 F.3d at 678. The typical real world purchaser (and potential survey respondent) is not familiar with <u>all</u> prior art designs. Third, before the '646 patent and accused product can be compared, functional aspects of the patent design (*i.e.*, the left and right square drive ends) must be "factored out." *Richardson*, 597 F.3d at 678. Plaintiff's polling did not factor out functional aspects of the patent design. *See Spotless Enters., Inc. v. A & E Prods. Group L.P.*, 294 F. Supp.2d 322, 347(E.D.N.Y. 2003) (calling plaintiff's survey "severely flawed" because it did not demonstrate respondents' choice was based on ornamental aspect of defendant's hanger). Even if the Court were to consider Plaintiff's anecdotal polling evidence, it is even less persuasive than expert survey evidence this Court found insufficient to create a genuine issue of material fact as to design patent infringement. *Puritan-Bennett Corp.,* 2004 U.S. Dist. LEXIS 6896, at *75-78.[22]

---

[21] Plaintiff's customer interviews fail to comply with even basic standards for litigation surveys set forth in the *Manual for Complex Litigation* § 11.493 (4th ed. 2004) (stating that relevant factors in assessing the admissibility of a survey are (1) the population was properly chosen and defined; (2) the sample chosen was representative of that population; (3) the data gathered were accurately reported; and (4) the data were analyzed in accordance with accepted statistical principles, and that in assessing the validity of a survey, a court should consider: (1) whether the questions asked were clear and not leading; (2) whether the survey was conducted by a qualified persons following proper interview procedures; and (3) whether the process was conducted so as to ensure objectivity).

[22] *See also OddzOn,* 122 F.3d at 1400-01 (affirming a finding of summary judgment of non-infringement despite evidence of actual confusion and a survey purportedly showing respondents stated there was overall similarity between patented and accused designs); *Minka Lighting, Inc. v. Craftmade Int'l, Inc.*, No. 3-00-CV-0888-G, 2002 U.S. Dist LEXIS 8693, at * 13-15 (N.D. Tex. May 16, 2002) (granting summary judgment of non-infringement notwithstanding Plaintiff's survey evidence showed 71% of respondents stated plaintiff's and defendant's ceiling fans had "substantially the same design"), *aff'd*, 93 Fed. Appx. 214 (Fed Cir. 2004) (nonprecedential).

## VI.    THE '646 PATENT IS INVALID AS ANTICIPATED AND OBVIOUS.

The '646 patent copied well known prior art designs and is anticipated by, and obvious over, prior art that discloses the same simplistic tool handle design. 35 U.S.C. §§ 102, 103. A number of tool handle designs before April 13, 1995 were not before the Patent Office during prosecution. This un-cited prior art is more pertinent and makes the burden of establishing invalidity by clear and convincing evidence "easier to sustain." *Microsoft*, 131 S.Ct. at 2251; *Applied Materials v. Advanced Semiconductor Materials, Inc.*, 98 F.3d 1563, 1569 (Fed. Cir. 1996) ("burden may be more or less easily carried because of the additional evidence.").

### A.    The '646 Patent is Invalid Because it is Anticipated.

#### 1.    The Test for Invalidity Based on Anticipation

Design patents are subject to the novelty requirements of 35 U.S.C. § 171. A determination that a patent claim is anticipated involves a two-step analysis: "the first step requires construing the claim," and "[t]he second step in the analysis requires a comparison of the properly construed claim to the prior art . . . ." *Power Mosfet Techs., LLC v. Siemens AG*, 378 F.3d 1396, 1406 (Fed. Cir. 2004). As to the first step, the '646 patent claim must be construed the same for purposes of both the validity and infringement analyses. *See, e.g., Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003); *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers."). Earlier this year, the Federal Circuit, in *High Point Design LLC v. Buyer's Direct, Inc.*, 730 F.3d 1301, 108 U.S.P.Q.2d 1183 (Fed. Cir. 2013), confirmed it did not extend the more relaxed construction requirements of *Egyptian Goddess* when a court determines design patent invalidity. 108

U.S.P.Q.2d at *1193*.[23] Courts must still construe design patents when determining patent validity so that others can understand the reasoning behind their decisions. *Id.*

As to the second step, the Federal Circuit has established the same "ordinary observer" test for anticipation under § 102, as for infringement. *Int'l Seaway Trading*, 589 F.3d at 1240. The focus is on the "overall designs" of the patent and prior art. *Id.* If the '646 patent design is substantially similar to prior art designs, the '646 patent is anticipated. *Gorham*, 81 U.S. at 528.

**2.      Applying the Ordinary Observer Test Shows Anticipation.**

After considering the properly-construed ornamental aspects of the '646 patent and the un-cited prior art, a reasonable jury could only find that the '646 patent is anticipated under § 102, because it does not contain a new, original and ornamental design as required by § 171.



a.      The '646 patent is Anticipated by *Kress* and its commercial embodiment the *M-110* Extension Handle.

The un-cited *Kress*, shown to the left, discloses a "Revolving Grip Tool" that includes a socket extension with a knurled grip. *Kress,* col. 2, ll. 42-49. *Kress* reveals a tool handle that is substantially similar to the '646 patent claim. Kemnitzer Decl. at ¶ 47. In addition, the un-cited prior art *M-110*, shown below, is a one piece extension handle with a knurled handle that is the commercial embodiment of *Kress. Kress* and the *M-110* each discloses substantially all features found in the '646 patent. *Id.* at ¶ 48.

---

[23]  In *High Point*, the Federal Circuit found that the district court "erred by failing to translate the design . . . . into a verbal description." 108 U.S.P.Q.2d at 1193. The Federal Circuit found the district court's description of the design patent in suit to be insufficient because it described the claimed design at "too high a level of abstraction." *Id.*. The Court instructed the district court to "add sufficient detail to its verbal description of the claimed design to evoke a visual image consonant with that design." *Id.*



The only difference between *Kress* and the *M-110* on the one hand, and the '646 patent on the other, as shown above, is the shaft's length that includes the male square drive. *Id.* at ¶ 49. This very minor difference merely prevents the '646 patent from being an exact copy of *Kress* or the *M-110*. The designs are otherwise substantially identical. *Id.* *Kress/M-110* and the '646 patent each exhibits a cylindrical, knurled handle with a tapered bottom end leading to a male square and has a chamfered, squared off top end with a female square drive. *Id.* at ¶¶ 48, 50. An ordinary observer familiar with the prior art would have found the '646 patent to be substantially similar to either *Kress* or the *M-110,* or both, because their resemblance is such that the ordinary observer, giving such attention as a purchaser usually gives to tool products of this kind, would be deceived into purchasing the product shown in the '646 patent supposing it to be *Kress* or the *M-110*. *Id.* at ¶ 51.

    b.  <u>The '646 patent is Anticipated by *Wolfe*</u>

The un-cited *Wolfe* "Ratchet Tool" (Figure 1 is shown on the left below), discloses a nearly identical cylindrical extension handle to the '646 patent design, including a knurled barrel (24), a slightly beveled end cap, a tapered end (18), an unknurled area near the taper (32), and a square socket drive (12). Kemnitzer Decl. at ¶ 54. *Wolfe's* barrel does not include a female

square drive; however, this purely functional feature is not protected by a design patent.

*Richardson*, 597 F.3d at 1294.



There are two insignificant differences between *Wolfe* and the '646 patent: the knurling in *Wolfe*

does not extend the barrel's entire length; and *Wolfe* includes an extra handle for leverage. These

minor differences merely prevent the '646 patent from being an exact copy of *Wolfe*. *Id.* at ¶ 55.

An ordinary observer would find the design claimed in the '646 patent to be substantially similar

to *Wolfe* because their resemblance is such that the ordinary observer, giving such attention as a

purchaser usually gives to hand tools of this type, would be deceived into purchasing the product

shown in the '646 patent supposing it to be *Wolfe*. *Id.* at ¶ 56.

### B. The '646 Patent is Invalid as Obvious

#### 1. The Test for Invalidity of a Patent Based on Obviousness

A patent may not be issued if "the differences between the subject matter sought to be

patented and the prior art are such that the subject matter as a whole would have been obvious at

the time the invention was made to a person having ordinary skill in the art . . . ." 35 U.S.C. §

103(a).[24] Under Section 171, "[d]esign patents are subject to the nonobviousness requirement of

---

[24]  The parties agree one of ordinary skill in the art would include an industrial designer, or someone who has gained knowledge through practical experience in the research and development of hand tools. Bowler Decl. at Ex. 20, p. 14 (Pl.'s Resp. to Interrog. # 9); Kemnitzer Decl. at ¶ 33. One skilled in the art would also need to know about previous designs, disclosed in both patents and products.  Kemnitzer Decl. at ¶ 33.

35 U.S.C. § 103."[25] *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1380 (Fed. Cir.

2009). To evaluate the differences between the claimed invention and the prior art, the court's

> ultimate inquiry under section 103 is whether the claimed design would have been obvious
> to a designer of ordinary skill who designs articles of the type involved.  More specifically,
> the inquiry is whether one of ordinary skill would have combined teachings of the prior art
> to create the same overall visual appearance as the claimed design.

> Before one can begin to combine prior art designs, however, one must find a single
> reference, 'a something in existence, the design characteristics of which are basically the
> same as the claimed design.' Once this primary reference is found, other references may be
> used to modify it to create a design that has the same overall visual appearance as the
> claimed design. These secondary references may only be used to modify the primary
> reference if they are 'so related to the primary reference that the appearance of certain
> ornamental features in one would suggest the application of those features to the other.'

*Durling v. Spectrum Furniture Co., Inc.*, 101 F.3d 100, 103 (Fed. Cir. 1996) (citations omitted).

Earlier this year, the Federal Circuit confirmed this is the proper obviousness analysis for

a design patent. *High Point*, 108 U.S.P.Q.2d at 1191-92. Citing *Durling*, the Federal Circuit

reiterated that "the obviousness of a design patent must . . . be assessed from the viewpoint of an

**ordinary designer**," not an "ordinary observer." *Id.* at 1192 (emphasis added) (finding district

court's § 103 analysis incorrectly used an "ordinary observer" standard). This more sophisticated

inquiry requires the Court to determine if the prior art references are so related that the

appearance of certain ornamental features in one would suggest the application of those features

to the other to a designer of ordinary skill (who designs articles of the type involved).

Therefore, the first step of the § 103 analysis (*i.e.*, the determination of whether there is a

proper primary reference) has two parts, which require the district court to: "1) discern the

correct visual impression created by the patented design as a whole; and 2) determine whether

there is a single reference that creates 'basically the same' visual impression." *Id.* at 1191. Such a

primary reference may take the form of other patents, printed publications, or actual items of

---

[25]   In performing an obviousness analysis, a court considers (1) the scope and content of the prior art, (2) the
differences between the claimed invention and the prior art, (3) the level of ordinary skill in the art, and (4) any
objective indicia of nonobviousness. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).

marketplace prior art which were in pubic use more than one year prior to the filing of the application for the contested patent. This Court can make this obviousness determination "almost instinctively" (as the Federal Circuit noted approvingly in *Durling*, 101 F.3d at 103), that is, by direct visual inspection and with or without the aid of expert testimony whose opinions "may be relevant to the factual aspects of the analysis leading to that legal conclusion." *High Point*, 108 U.S.P.Q.2d at 1193.[26]

"As to the first part of the first step [under *Durling*] discerning the correct visual impression created by the patented design as a whole"—the district court must first "translate the design of the [asserted] patent into a verbal description" so that "the parties and appellate courts can discern the internal reasoning employed by the trial court to reach its decision as to whether or not a prior art design is basically the same as the claimed design." *High Point*, 108 U.S.P.Q.2d at 1193. As to the second part of the first step, *i.e.*, determining if there is a reference with "basically the same" visual impression—the "district court should do a side-by-side comparison of the [potential primary reference and the claimed design] to determine if they create the same visual impression." *Id.* Once the first step under *Durling* is completed, the court is in a position to assess if the primary prior art reference, modified by the secondary reference(s), provide a design with the "same overall visual appearance as the claimed design," as required under *Durling's* second step.  *Id.* at 1193-94.

### 2.    Analysis of Obviousness of the '646 Patent in Light of the Prior Art

In this case, as one skilled in the art, it is Professor Kemnitzer's opinion that the '646 merely combines well-known features of prior art tool handles in a way which would have been

---

[26]  In *High Point*, the Federal Circuit explained that while an expert's opinion on the legal conclusion of obviousness is neither necessary nor controlling, an expert's opinion may still be relevant to the factual aspects of the analysis leading to that legal conclusion. 108 U.S.P.Q.2d at 1193. The Court cited precedent indicating that an expert's testimony may be helpful to explain the technology, the scope and content of the prior art, the differences between the prior art and the invention, and the level of skill in the art. *Id.* The Federal Circuit reasoned, therefore, that the district court erred when it categorically disregarded a purported expert declaration on the issue of obviousness. *Id.*

obvious to any designer of ordinary skill in the field of tool handles in April, 1995. *See generally* Kemnitzer Decl. at ¶¶ 58-74. Any of the following uncited prior art are visually similar enough to the '646 patent design as a whole to qualify, individually, as a primary reference: (i) *Kress*; (ii) the *M-110*; (iii) *Wolfe*; and (iv) *White*. It would have been obvious to one skilled in the art to use one other secondary reference to modify each primary reference to create a design that has the same overall visual appearance as the '646 patent.

        a.      <u>First Analysis of Obviousness: It Would Have Been Obvious to<br/>One of Ordinary Skill in the Art to Modify *Kress*</u>

The single, minor difference between the '646 patent design and *Kress* (or, alternatively, the *M-110* embodiment of *Kress*), is the longer shaft length in the prior art, shown below.



**Figure 4 of *Kress***               **M-110 embodiment of *Kress***

*Kress* and the *M-110* are each similar enough to the '646 patent to qualify as a primary reference. In the hand tool field, it is very common for tools to come in different lengths. Kemnitzer Decl. at ¶ 61. Socket extensions often come in sets with 1.5," 3," and 6" extensions. Changing the shaft length in *Kress* or the *M-110* to correspond with shaft length in the '646 patent claim in April, 1995 would have been obvious to a designer skilled in the art who designs hand tools. *Id.* at ¶ 62.

        b.      <u>Second Analysis of Obviousness: It Would Have Been Obvious to<br/>One of Ordinary Skill in the Art to Modify *Kress* with *Wolfe*</u>

The uncited *Wolfe*, Fig. 1 shown below, discloses a shaft that is almost identical in size and proportion to the shaft in the '646 patent. A person of ordinary skill in the art in April, 1995 would have recognized the obvious opportunity to use and modify *Kress*, as a primary reference,

using the teachings of the secondary reference *Wolfe*. Combining *only Wolfe's* shaft with the

remainder of *Kress's* design, a designer of skill in the art would arrive at the '646 patent design.



Because only *Wolfe's* shaft needs to be combined with *Kress*, the '646 patent would have been

obvious over *Kress* as modified by *Wolfe* to a designer of ordinary skill. Kemnitzer at ¶¶ 63-65.

        c.     <u>Third Analysis of Obviousness: It Would Have Been Obvious to</u>
                          <u>One of Ordinary Skill in the Art to Modify *Wolfe* with *Kress*</u>

The uncited *Wolfe* is visually similar enough to the '646 patent claim to qualify as a

primary reference under § 103. It would also have been obvious to a designer of ordinary skill in

April 1995 to combine *Wolfe* with tools such as *Kress*. Kemnitzer Decl. at ¶ 66. *Wolfe* discloses

a tool handle, the main portion of which is almost identical in size and proportion to the '646

patent handle. A difference between *Wolfe* and the '646 patent, is the use of a secondary handle

for improved control. *Id.* at ¶ 67. A designer skilled in the art in April, 1995 would be aware that

many tools come with and without auxiliary handles, and many come with removable handles

such as polishers and sanders. *Id.* It would have been obvious to one of ordinary skill to remove

the handle from *Wolfe* to arrive at the basic design of the '646 patent. *Id.* at ¶ 68.

With *Wolfe's* handle removed, there is only a minor difference between *Wolfe* and the

'646 patent. This is the extent of knurling along the length of the main body. *Kress*, however,

discloses substantially the same area of knurling as that shown in the '646 patent. Combining

*only* the knurling from the secondary reference *Kress* with the modified *Wolfe*, a designer of skill in the art would arrive at the '646 patent design. One skilled in the art would include additional knurling to improve the grip. *Id.* at ¶ 69.  Because only the knurling from *Kress* needs to be combined with *Wolfe*, the design claimed in the '646 patent would have been obvious over *Wolfe* as modified by *Kress* to a designer of ordinary skill in April, 1995. *Id.* at ¶ 70.

        d.      <u>Fourth Analysis of Obviousness: It Would Have Been Obvious to<br/>One of Ordinary Skill in the Art to Modify *White* with *Kress*</u>

The un-cited *White,* shown in Fig. 1 on the left below, discloses a tool handle with many similar features to the '646 patent. *White* reveals a knurled barrel, a tapered end, and a square



socket drive. Kemnitzer Decl. at ¶ 72.  *White* has a rounded end rather than the flat end and female square drive of the '646 patent claim. The square drive on the handle's end, however, is purely functional and not relevant. *White's* barrel also does not include a reduced diameter, unknurled portion proximate the taper. *White* is visually similar enough to the '646 patent claim to qualify as a primary reference under § 103. *Id.*

It would have been obvious to a designer of ordinary skill in the art in April, 1995 to combine the features of the primary reference *White* with the secondary reference of *Kress* to arrive at the '646 patent claim. *Id.* at ¶ 73. *Kress* discloses a flat end with a female square drive and a tapered, unknurled portion. *White* and *Kress* are both extension type tools. One skilled in the art would have recognized the obvious opportunity to combine *White's* unknurled barrel with

the unknurled area revealed in *Kress* to provide an extension with less knurling near the socket, for example, to prevent scratching surfaces adjacent to the socket. *Id.* Further, one skilled in the art would have combined *White* with the flat-top of *Kress* to reduce the overall tool length to prevent clearance issues. *Id.* Because only the knurling and the flat top from *Kress* needs to be combined with *White*, the '646 patent design would have been obvious over *White* as modified by *Kress* to a designer of ordinary skill in April, 1995. *Id.* at ¶ 74.

   **3.**  **There are no Secondary, Objective Factors To Rebut Obviousness.**

   The final obviousness factor requires the Court to take into account any "secondary considerations" of nonobviousness. *Graham*, 383 U.S. at 17-18. These include commercial success, long felt but unresolved needs, failure of others to find a solution to the problem at hand, copying, praise of the invention, departure from expert-accepted principles, and widespread recognition. *Id.* Plaintiff "is not relying on secondary considerations of non-obviousness," and Defendants are not aware of any. Bowler Decl. at Ex. 20, pp. 13-14 (Pl.'s Resp. to Interrog. # 8).

<u>**CONCLUSION**</u>

   For these reasons, Defendants are entitled to summary judgment on the grounds the Spinning Impact Extensions do not infringe the '646 patent and the patent is invalid.

By: /s/ James W. Riley, Jr.     By: /s/ John M. Bowler
James W. Riley, Jr., Esq.       John M. Bowler, Esq.
Indiana Bar # 6073-49        Georgia Bar # 071770
Riley Bennett & Egloff, LLP     Troutman Sanders LLP
141 East Washington Street, Fourth Floor 600 Peachtree St. NE, Suite 5200
Indianapolis, Indiana 46204     Atlanta, Georgia 30308-2216
Phone (317) 636-8000       Phone: (404) 885-3190
Fax: (317) 955-2158        Fax: (404) 962-6513
JRiley@rbelaw.com        john.bowler@troutmansanders.com

   **Attorneys for Defendants Balkamp Inc., Genuine Parts**
   **Company, and National Automotive Parts Association**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KENNETH BUTLER, SR., | &#124; |
| | &#124; |
| Plaintiff, | &#124; |
| | &#124;      No. 1:12-cv-01716-SEB-DML |
| vs. | &#124; |
| | &#124; |
| BALKAMP INC., | &#124; |
| NATIONAL AUTOMOTIVE PARTS | &#124; |
| ASSOCIATION, GENUINE PARTS | &#124; |
| COMPANY, et al., | &#124; |
| | &#124; |
| Defendants. | &#124; |

_____

## CERTIFICATE OF SERVICE

I hereby certify that on December 31, 2013, I caused this *Defendants' Memorandum of Law in Support of Motion for Summary Judgment of Non-Infringement and Invalidity of U.S. Design Patent No. D500,656 S* to be filed with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the all attorneys of record, including:

> Joseph J. Zito, Esq. (jzito@dnlzito.com)
> Benjamin C. Deming, Esq. (bdeming@dnlzito.com)

> _/s/ John M. Bowler_____
> John M. Bowler