UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KENNETH BUTLER, SR., | \| |
| | \| |
| Plaintiff, | \| |
| | \| No. 1:12-cv-01716-SEB-DML |
| vs. | \| |
| | \| |
| BALKAMP INC., NATIONAL AUTOMOTIVE PARTS ASSOCIATION, GENUINE PARTS COMPANY, *et al.*, | \| |
| | \| |
| Defendants | \| |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSIVE *MARKMAN* BRIEF**

James W. Riley, Jr., Esq.
Indiana Bar # 6073-49
Riley Bennett & Egloff, LLP
141 East Washington Street, Fourth Floor
Indianapolis, Indiana  46204
Phone: (317) 636-8000
Fax: (317) 955-2158
JRiley@rbelaw.com

John M. Bowler
Georgia Bar # 071770
Troutman Sanders LLP
600 Peachtree St NE, Suite 5200
Atlanta, GA 30308-2216
Phone: (404) 885-3190
Fax: (404) 962-6513
john.bowler@troutmansanders.com
(Admitted Pro Hac Vice)

**Attorneys for Defendants Balkamp Inc., Genuine Parts Company, and National Automotive Parts Association**

**TABLE OF CONTENTS**

**Page**

I.     Defendants Do Not Require a Separate Markman Hearing ............................. 1

II.    Plaintiff's "Functional" Versus "Ornamental" Arguments Attempt to
       Manufacture Disputes Where There Are None ................................................ 4

III.   Any Verbal Description Of the '646 Patent Claim in the Comparison
       to the Prior Art and Accused Product Should Evoke a Visual Image
       Consonant With The Patent Design So That Others Can Understand
       the Reasoning Behind the Court's Decision-Making ....................................... 6

CONCLUSION ............................................................................................................. 9

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Amgen Inc. v. Hoechst Marion Roussel*,
   314 F. 3d 1313 (Fed. Cir. 2003)..................................................................................................6

*Ballard Med. Prods. v. Allegiance Healthcare Corp.*,
   268 F.3d 1352 (Fed. Cir. 2001)....................................................................................................2

*Durling v. Spectrum Furniture Co., Inc.*,
   101 F.3d 100 (Fed. Cir. 1996).......................................................................................................3

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
   543 F.3d 665 (Fed. Cir. 2008)(en banc).......................................................................... passim

*Fanimation, Inc. v. Dan's Fan City, Inc.*,
   Case No. 1:08-cv-1071-TWP-WGH, 2010 U.S. Dist. LEXIS 134526 (S.D. Ind. Dec.
   16, 2010) (Pratt, J.), *aff'd*, 444 F. App'x 449 (Fed. Cir. 2011).........................................4, 5, 7

*Gorham v. White*,
   81 U.S. 511 (1871)........................................................................................................................7

*High Point Design LLC v. Buyer's Direct, Inc.*,
   730 F.3d 1301, 108 U.S.P.Q.2d 1183 (Fed, Cir. 2013) .......................................................3, 4, 5

*L.A. Gear Inc. v. Thom McAn Shoe Co.*,
   988 F.2d 1117 (Fed. Cir. 1993)....................................................................................................5

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370 (1996)............................................................................................................ passim

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
   122 F.3d 1396 (Fed. Cir. 1997)...........................................................................................3, 5, 7

*Richardson v. Stanley Works, Inc.*,
   597 F.3d 1288 (Fed. Cir. 2010)................................................................................................2, 3

i

Defendants Balkamp Inc., National Automotive Parts Association, and Genuine Parts Company ("Defendants") submit this Reply to Plaintiff's Responsive *Markman* Brief ("Response" or "Doc. 34").

I.      **Defendants Do Not Require a Separate *Markman* Hearing**

In his Response, Plaintiff contends that Defendants "have insisted on requesting a *Markman* proceeding" for U.S. Design Patent No. D500,646 S ("the '646 patent"). [Doc. 34, pp. 4-5]. Defendants have not *demanded* such a proceeding. Rather, *Markman* claim construction *is* a fundamental aspect of *every* patent case including design patent cases. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008)(en banc).[1] The Court *must* construe the claim as a matter of law, whether that comes in the form of:

- Referring only to the '646 patent figures (*e.g.*, "The '646 patent claims the ornamental design for a tool handle, as shown and described in Figures 1 through 7").

- Providing a verbal description as to which features of the '646 patent are purely functional and are not to be considered.

- Providing a description of the claimed '646 patent design feature-by-feature.

- Describing certain features of the '646 patent design and the prior art to explain the Court's own analysis.

---

[1] In *Egyptian Goddess*, the court began by outlining its precedent on claim construction in design patent cases, stating: "While this court has held that trial courts have a duty to conduct claim construction in design patent cases . . . the court has not prescribed any particular form that the claim construction must take." 543 F.3d at 679 (citations omitted). The court further noted that "[t]o the contrary, the court has recognized that design patent cases 'typically are claimed as shown in drawings,' and claim construction 'is adapted accordingly.'" *Id.* (citation omitted). Further, the court ruled that a trial court's "decision to issue a relatively detailed claim construction will not be reversible error" absent a showing of prejudice because "the level of detail to be used in describing the claimed design is a matter within the court's direction." *Id.*

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 376-91 (1996) (claim construction is exclusively within the province of the court); *Egyptian Goddess,* 543 F.3d at 679 80.

Plaintiff nonetheless argues that "claim construction in design patent cases should ordinarily not be done." [Doc. 34, p. 2] (citing *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010). The *Richardson* decision cited by Plaintiff, however, held nothing of the sort. The Federal Circuit did not direct district courts to eschew claim construction in design patent cases; rather, the Court reiterated its previous caution in *Egyptian Goddess* that district courts should avoid providing detailed verbal constructions of design patent claims when performing claim construction.[2] In fact, the Court in *Richardson* held that there was no error in the district court's *claim construction* which distinguished, as part of its claim construction, the ornamental aspects from the functional aspects of Richardson's design." *Id.* at 1292-94.

However, "*Markman* does not require a district court to follow any particular procedure in conducting claim construction," and *Markman* hearings are not required. *Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001); *Egyptian Goddess*, 543 F.3d at 679. As Defendants pointed out in their initial *Markman* brief [Doc. 31, pp. 1-2], there are other alternatives, including summary judgment procedures, which district courts have used to carry out their claim construction duties under *Markman*. *See, id.* at 2 (citing cases including, *inter alia*, *Fanimation, Inc. v. Dan's Fan City, Inc.*, Case No. 1:08-cv-1071-TWP-WGH, 2010 U.S. Dist. LEXIS 134526 (S.D. Ind. Dec. 16, 2010) (Pratt, J.), *aff'd*, 444 F. App'x 449 (Fed. Cir. 2011)).

---

[2] The full quote from *Egyptian Goddess* which the Federal Circuit paraphrased in *Richardson* reads: "Given the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to "construe" a design patent claim **by providing a detailed verbal description of the claimed design.**" *Id.* at 679 (emphasis added).

2

In their initial *Markman* brief, Defendants took the position that a separate *Markman* hearing is <u>not</u> necessary in this case. [*See* Doc. 31, p. 2: ("Defendants <u>do not believe that a claim construction hearing is necessary</u> and that the Court can reach a decision on claim construction issues on the papers.") (emphasis added)]; *see also* Defs.' Mem. of Law in Support of Mot. for Summary Judgment [Doc. 33, p. 10 n.16 ("This Court can rule on claim construction issues within the context of this summary judgment motion <u>with or without a separate *Markman* hearing</u>."]. Defendants have suggested that the Court may perform claim construction instead in the context of ruling on Defendants' summary judgment motion. [Doc. 31, pp. 1-2].

As the Federal Circuit has observed, a verbal description of the claimed design can be helpful in situations such as this case where:

1. The claimed patent design has both ornamental and purely functional features. *Egyptian Goddess, 543 F. 3d at 680; Richardson*, 597 F.3d at 1243 (approving of a district court "factoring out" the functional elements of a claimed design from the ornamental aspects as part of claim construction); *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). In the present case, the parties agrees the '646 patent design discloses both functional and ornamental features. [Doc. 29 §§ B-C, pp. 2-3; Doc. 31, pp. 3-4; Doc 34, pp. 4-8].

2. A district court is being asked to decide the invalidity of a design patent so that others can understand the reasoning behind the court's decision-making. *High Point Design LLC v. Buyer's Direct, Inc.*, 730 F.3d 1301, 108 U.S.P.Q.2d 1183, 1193 (Fed, Cir. 2013). [3]

---

[3] In *High Point*, the Federal Circuit observed that district courts must include sufficient detail in their verbal descriptions of a design patent claim design when determining patent. 108 U.S.P.Q.2d at 1193 (citing *Durling v.*

3

    3. A district court wishes to describe certain features of the claimed design, the prior art, and accused product to explain its own analysis. *Egyptian Goddess*, 543 F.3d at 608.[4]

[Doc. 31, pp. 5-8].

In their initial *Markman* brief, Defendants addressed each situation and how they apply to this case [Doc. 31, pp. 5-8].

## II. Plaintiff's "Functional" Versus "Ornamental" Arguments Attempt to Manufacture Disputes Where There Are None.

The parties agree that the '646 patent is comprised of seven ornamental and functional features or items. The 48-word description which the parties used in their joint claim construction statement [Doc. 29, §B, pp. 1-2] to describe the seven features is reproduced verbatim below:

| Item | Description |
|---|---|
| 1 | Front (male) square drive or Front adaptor |
| 2 | Cylindrical extension shaft or Cylindrical front end portion |
| 3 | Tapered front end |
| 4 | Unknurled, reduced diameter front end or Untapered front end |
| 5 | Knurled handle or Knurled portion of the handle |
| 6 | Beveled or tapered back end |
| 7 | Rear (female) square drive or Square back adaptor |

[Doc. 29 at §§B-C, pp. 2-3].

---

*Spectrum Furniture Co., Inc.*, 101 F.3d 100, 103 (Fed. Cir. 1996) ("From this translation, the parties and appellate courts can discern the internal reasoning employed by the trial court to reach its decision as to whether or not a prior art design is basically the same as the claimed design."). The Court found the district court "erred by failing to translate the design . . . . into a verbal description," *id.*, and further noted that the description which the district court did provide insufficiently described the claimed design at "too high a level of abstraction." *Id.*. The Court instructed the district court to "add sufficient detail to its verbal description of the claimed design to evoke a visual image consonant with that design." *Id.*

[4] In *Fanimation*, the Court observed that "a court need not issue a detailed verbal description of the claimed designs, unless it is necessary or helpful." 2010 U.S. Dist. LEXIS 134526, *4 (citing *Egyptian Goddess,* 543 F.3d at 679). The Court went on to provide side-by-side pictorial comparisons between the two fan blade design patents in suit and the accused product. *See, id.*, 2010 U.S. Dist. LEXIS 134526 at *6 ("Comparisons between the claimed ['450 patent] design and the accused design are set out below); *id.* at *14 ("Comparisons between the claimed ['683 patent] and the accused product are set out below"). Immediately after the visual comparison the Court verbalized the "differences" which the images "exposed" in the patented and accused designs. *Id.* at *6-7; *see also id.* at *14.

The parties agree that the male square drive on the front end of the tool handle (Feature 1) and the female square drive on the back end of the tool handle (Feature 7) are purely functional and should be factored out of the claimed design. [Doc. 29, pp. 2, 8, Doc. 31, p. 3; Doc 34, pp. 4,8]. The parties also agree that the tapered front end feature (Item #3) and the unknurled, reduced diameter front end feature (Item # 4) are purely ornamental and part of the '646 patent design. [Doc. 29, p. 2, Doc 31, pp. 2-3, Doc. 34, p. 4]

The majority of Plaintiff's Response [Doc. 34, pp. 4-7] is devoted to the idea that the parties somehow disagree on how the Court should treat the remaining three features—namely, the cylindrical extension shaft (Item 2); the knurled handle (Item 5); and the beveled or tapered back end (Item 6). Plaintiff maintains that these three features are purely ornamental. Defendants, in turn, have said these features have both "functional/ornamental" properties. [Doc. 29, p. 2] Defendants do not contend, however, as Plaintiff argues, that the Court should factor out Features 2, 5, and 6, as "functional."[5] *Id.* In the parties' Joint Proposed Claim Construction Statement and in Defendants' initial *Markman* brief, Defendants asserted just the opposite—that they should be regarded as <u>ornamental</u> and part of the '646 patent claim of the '646 patent claim:

> "To the extent that a feature has both functional and ornamental aspects, ***Defendants assert that the feature should be treated <u>as ornamental</u> and part of the design patent claim***."

---

[5] By "functional," Defendants meant that Features 2, 5, and 6 of the '646 patent tool handle perform a function—which they clearly do—<u>not</u> that their design is dictated by a utilitarian purpose of the article. [*See* Doc. 29, pp. 2, 13 & n.4 (citing *L.A. Gear Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993)]; *see also High Point*, 108 U.S.P.Q.2d at 1194 (stating that a design patent can be declared invalid if the claimed design is "primarily functional" rather than "primarily ornamental," *i.e.*, if the claimed design is "dictated by the utilitarian purpose of the article."). Thus, whereas Plaintiff contends Features 2, 5, and 6 serve "no functional purpose" [Doc. 34, §§ III-V, pp. 5-7], they in fact do. The cylindrical "*extension* shaft" serves the *function* to extend the distance between the socket mounted on the end of the tool and the main body of the tool; knurling, by definition, is a functional feature added to tools to improve grip on an otherwise smooth metal surface; and beveled edges are often used in manufacturing for the functional purpose to smooth sharp edges to prevent chipping and damage. Nonetheless, because Features 2, 5, and 6 come in different lengths, patterns, and radii, respectively, making them at least partially an ornamental design choice, Defendants "assert[ed] that the feature should be treated as ornamental and part of the design patent claim." [Doc. 29, p. 2 & Doc. 31, pp. 3-4].

5

[Doc. 29, p. 2 (emphasis added); *see also* Doc. 31, pp. 3-4].[6] Therefore, Plaintiff's contention that there is a dispute as to how the Court should treat Features 2, 5 and 6 is a red herring. The parties agree the Court should treat these three features as ornamental and part of the '646 patent claim. That is why Defendants and their industrial design expert Professor Kemnitzer spent the time and effort factoring Features 2, 5, and 6 "into" their non-infringement and invalidity analyses and comparisons to the accused product and prior art.

### III. Any Verbal Description Of the '646 Patent Claim in the Comparison to the Prior Art and Accused Product Should Evoke a Visual Image Consonant With The Patent Design So That Others Can Understand the Reasoning Behind the Court's Decision-Making.

Plaintiff contends that verbal claim construction is not appropriate. [Doc. 34, §VI, pp. 7-8]. Plaintiff, however, fails to explain how the Court could effectively construe the '646 patent claim and decide the non-infringement and invalidity issues that are before the Court without using words to describe the features shown in the seven drawings of his '646 patent.

Plaintiff's strenuous argument against any claim construction raises Defendants' concern because from the outset of this case Plaintiff has excluded any reference to the seven patent drawings from his overbroad infringement allegations against the accused product. Although Plaintiff pays lip service to the well-settled rule of law that design patents are "best understood" by "looking at the figures," [Doc. 34, p. 2], he cannot even bring himself to articulate – let alone with any consistency – what are the ornamental features of his '646 patent design to be compared against the accused product and the prior art. *See Amgen Inc. v. Hoechst Marion Roussel*, 314 F. 3d 1313, 1330 (Fed. Cir. 2003) (patent claims must be construed the same for purpose of both

---

[6] The issue of functionality of a design patent claim relates to claim construction, and it is the Court's role to distinguish the ornamental from the functional features. *Egyptian Goddess,* 543 F.3d at 680 (citing *OddzOn,* 122 F.3d at 1405. Thus, although claim construction may involve underlying factual issues, it is ultimately a legal issue decided by the Court, not by a fact finder at trial. *Id.* at 679-80.

6

the infringement and validity analysis). Plaintiff's "bobbing-and-weaving" approach to claim construction is perhaps best illustrated in the following excerpt from his Response:

> [W]ords can only approximate and cannot adequately express a visual impression; thus the verbal approximation is so broad as to encompass visually different items . . . The very nature of designs is that they are visual and not verbal. The very nature of words is that they can be broadly construed and interpreted differently by different readers. This is exactly why it is Plaintiff's position that a verbal claim construction should not be rendered in a design patent case.

[Doc. 34, pp. 3]. This is nonsense. Plaintiff opposes any sort of verbal claim construction, as he has repeatedly demonstrated since filing his complaint, because he does not want to be pinned down to the ornamental features of his patent claim in comparing his design to the accused product. Plaintiff cannot bob-and-weave any longer.

Although Plaintiff contends that "[a] picture in a design patent is truly worth **a thousand words**[,] [Doc. 34, p. 2 (emphasis added)],[7] the only words that he uses to describe his '646 patent are vague and undefined terms like a "visually pleasing tool handle," a "connecting link" between two functional ends, "unified," and "balanced."  [Doc. 35, p. 5]. Design patents, however do not protect such broad "design concepts" or "ideas" but rather only protect the ornamental design of what is pictured. *OddzOn,* 122 F.3d at 1405; *Fanimation*, 2010 U.S. Dist. LEXIS 134526, *4 ("[s]ignificantly, 'a design patent is defined by the content of its drawing; the proper construction of a design patent focuses on the overall visual impression of its ornamental, novel features.") (citation omitted). This Court need look no further than the **48 words** the parties efficiently used to verbally *describe* the seven ornamental and functional features of the '646 patent to see what the parties think the patent figures disclose.

---

[7] Because Plaintiff's believes his '646 patent figures can be described in a "1000 words," he has divorced his patent claim from the structure and ornamentation disclosed and extended it far beyond its lawful scope. It would be more accurate to say a design patent is essentially a picture patent that protects what is shown in the drawings and colorable imitations that are substantially the same such as to deceive an ordinary observer in light of the prior art. *Gorham v. White*, 81 U.S. 511 (1871), as *modified* by *Egyptian Goddess,* 543 F.3d 665.

To be clear, Defendants have *never* advocated that the Court construe the '646 patent, as Plaintiff argues, in a manner that risks that the "finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole." [Doc. 34, p.2] *Egyptian Goddess*, 543 F.3d at 680. Instead, Defendants have submitted that a proper claim construction would factor out the two functional front (male) and rear (female) square drive ends (Items 1 and 7). The Court's construction should also include at least a concise verbal description of the remaining five significant ornamental features of the '646 patent design —Items 2 through 6—to compare against the accused product and the prior art and decide the non-infringement and invalidity issues presented. [Doc. 30, pp. 1-2]. In their proposed construction, Defendants have attempted to evoke a visual image that is true to the '646 patent design *as a whole.* Defendants believe their proposed construction brings to mind a visual image that is in agreement with the overall design as disclosed in the seven '646 patent drawings. It is also in harmony with the 48 words the parties used to describe the seven ornamental and functional features of the '646 patent. [Doc. 29, p. 2].

The additional "markings" that Defendants supplied to the '646 patent figures [Doc. 31, pp. 15-17], were for the purposes of aiding the Court in understanding which features of the tool handle Defendants were discussing and the reasoning behind Defendants' proposed construction. Defendants found it helpful to add the "markings" where, as here, the differences between Plaintiff's patent and the accused product are so stark and the field of art is mature and crowded with numerous prior art tool handles that are so similar to the '646 patent design. Defendants provided the annotated '646 patent figures for the Court's benefit, to differentiate ornamental from functional features, to clarify, and to aid in the Court's construction of the '646 patent claim and for no other purpose. Defendants did not expect or insist the additional markings would be

8

included in a claim construction order for the trier of fact to compare to the accused product and prior art.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court adopt their proposed claim construction, or alternatively, that the Court use the parties' stipulated 48 word description of the features of the '646 patent as may be needed to explain the Court's analysis of the non-infringement and invalidity issues presented.

Dated:  February 18, 2014.

>By: /s/ John M. Bowler
>John M. Bowler, Esq.
>Georgia Bar # 071770
>Troutman Sanders LLP
>600 Peachtree St. NE, Suite 5200
>Atlanta, Georgia  30308-2216
>Phone: (404) 885-3190
>Fax: (404) 962-6513
>john.bowler@troutmansanders.com
>
>James W. Riley, Jr., Esq.
>Indiana Bar # 6073-49
>Riley Bennett & Egloff, LLP
>141 East Washington Street, Fourth Floor
>Indianapolis, Indiana  46204
>Phone (317) 636-8000
>Fax:  (317) 955-2158
>JRiley@rbelaw.com
>
>**Attorneys for Defendants Balkamp Inc., Genuine Parts Company, and National Automotive Parts Association**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KENNETH BUTLER, SR., | |
| Plaintiff, | |
| vs. | No. 1:12-cv-01716-SEB-DML |
| BALKAMP INC., NATIONAL AUTOMOTIVE PARTS ASSOCIATION, GENUINE PARTS COMPANY, et al., | |
| Defendants. | |

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2014, I caused this ***Defendants' Reply to Plaintiff's Responsive Markman Brief*** to be filed with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the all attorneys of record, including:

    Joseph J. Zito, Esq. (jzito@dnlzito.com)
    Benjamin C. Deming, Esq. (bdeming@dnlzito.com)

    /s/ John M. Bowler
    John M. Bowler