UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KENNETH BUTLER, SR.,     |

 Plaintiff,         |

            |  No. 1:12-cv-01716-SEB-DML

 vs.           |

            |

BALKAMP INC., NATIONAL   |
AUTOMOTIVE PARTS     |
ASSOCIATION, GENUINE PARTS  |
COMPANY, *et al.*,       |

            |

 Defendants        |

**REPLY MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF
<u>NON-INFRINGEMENT AND INVALIDITY OF U.S. DESIGN PATENT NO. D500,646 S</u>**

James W. Riley, Jr., Esq.      John M. Bowler
Indiana Bar # 6073-49       Georgia Bar # 071770
Riley Bennett & Egloff, LLP     Troutman Sanders LLP
141 East Washington Street, Fourth Floor  600 Peachtree St NE, Suite 5200
Indianapolis, Indiana  46204     Atlanta, GA 30308-2216
Phone: (317) 636-8000       Phone: (404) 885-3190
Fax: (317) 955-2158        Fax: (404) 962-6513
JRiley@rbelaw.com        john.bowler@troutmansanders.com
               (Admitted Pro Hac Vice)

**Attorneys for Defendants Balkamp Inc., Genuine Parts
Company, and National Automotive Parts Association**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 2

I.    Plaintiff Does Not Support His "Facts in Dispute" or Refute Defendants' Undisputed Facts, With Specific Citations to Evidence Per S.D. Ind. L.R. 56-1 ............. 2

II.   Defendants Do Not Infringe the '646 Patent ................................................... 4

     A.    Under the Controlling Law, No Reasonable Jury Could Conclude That the Spinning Impact Extensions Infringe the '646 Patent ............................................. 4

     B.    Plaintiff Is Limited to His Tool Handle Design Claimed in the '646 Patent, and His Overbroad Infringement Position Is Contrary to the Patent Laws ......... 10

     C.    Unlike Plaintiff, Defendants Properly Apply the Ordinary Observer Test to the Ornamental Aspects of the '646 Patent and Accused Product ...................... 11

     D.    An Ordinary Observer Would Not Find Substantial Similarities Between the '646 Patent Design and the Spinning Impact Extensions.............................. 13

     E.    Plaintiff's "Poll" is Not a Litigation Survey or Scientific Sampling, and it Does Not Create a Genuine Issue of Material Fact on Non-Infringement ......... 14

III.   The '646 Patent is Invalid ............................................................................ 15

     a.    Kress/M-110 – Anticipation .................................................................. 16

     b.    Wolfe - Anticipation .............................................................................. 18

     c.    Kress and Wolfe – Obviousness ........................................................... 19

     CONCLUSION.................................................................................................. 20

i

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adickes v. S.H. Kress & Co.*,
398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)..................................................4, 7, 17, 19

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).........................................................................................................15, 16

*Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*,
501 F.3d 1314 (Fed. Cir. 2007)........................................................................................12, 13

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.*,
73 F.3d 1573 (Fed. Cir. 1996)...................................................................................................5

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)................................................................................................................14

*Competitive Edge, Inc., v. Staples, Inc.*,
763 F. Supp.2d 997 (N.D. Ill. 2010), *aff'd without opinion*, 412 Fed. Appx. 304 (Fed.
Cir. 2011) ...............................................................................................................................10

*Contessa Food Prods., Inc. v. Conagra, Inc.*,
282 F.3d 1370 (Fed. Cir. 2002)..............................................................................................12

*Egger v. Phillips*,
710 F.2d 292 (7th Cir. 1983), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d
262 (1983)................................................................................................................................4

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) (en banc)....................................................................... passim

*Elmer v. ICC Fabricating, Inc.*,
67 F.3d 1571 (Fed. Cir. 1995).................................................................................................10

*Fanimation, Inc. v. Dan's Fan City, Inc.*,
Case No. 1:08-cv-1071-TWP-WGH, 2010 U.S. Dist. LEXIS 134526 (S.D. Ind. Dec.
16, 2010), *aff'd*, 444 F. App'x 449 (Fed. Cir. 2011) ...................................................... passim

*FMC Corp. v. Hennessy Indus.*,
836 F.2d 521 (Fed. Cir. 1987).................................................................................................12

*Gorham Co. v. White*,
81 U.S. 511, 20 L.Ed. 731 (1871).....................................................................................11, 13

## TABLE OF AUTHORITIES
(continued)

**Page**

*High Point Design LLC v. Buyer's Direct, Inc.*,
   730 F.3d 1301, 108 U.S.P.Q.2d 1183 (Fed. Cir. 2013) ...................................................3, 16, 17

*Int'l Seaway Trading Corp. v. Walgreens Corp.*,
   589 F.3d 1233 (Fed. Cir. 2009)................................................................................12, 14, 16

*Lee v. Dayton-Hudson Corp.*,
   838 F.2d 1186 (Fed. Cir. 1988)...........................................................................................6, 10

*Minka Lighting, Inc. v. Maxim Lighting Int'l, Inc.*,
   2009 U.S. Dist. LEXIS 20948 (N.D. Tex. Mar. 16, 2009) ......................................................9

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
   122 F.3d 1396 (Fed. Cir. 1998)..................................................................................3, 6, 11, 15

*Polaroid Corp. v. Eastman Kodak Co.*,
   789 F.2d 1556, 229 USPQ 561 (Fed.Cir.1986) ....................................................................17

*Puritan Bennett Corp. v. Penox Techs., Inc.*,
   IP 02-0762-C-M/S, 2004 U.S. Dist. LEXIS 6896 (S.D. Ind. Mar. 2, 2004)
   (McKinney, J.), *aff'd*, 2005 U.S. App. LEXIS 2757 (Fed. Cir., Feb. 17, 2005).....................15

*Richardson v. Stanley Works, Inc.*,
   597 F.3d 1288 (Fed. Cir. 2010)............................................................................................10

**STATUTES**

Fed. R. Civ. P. 56(c) ...............................................................................................................2, 14

Fed. R. Civ. P. 56(e) ...................................................................................................................4

S.D. Ind. L.R. 56-1.....................................................................................................................2, 3

ii

## INTRODUCTION

In his opposition [Doc. 35], Plaintiff continues to attempt to extend his narrow tool handle claim in U.S. Design Pat. No. D500,646 (the '646 patent") far beyond its proper scope. Plaintiff urges this Court to just ignore the patent figure details and focus instead on the unprotectable idea or design concept of a "visually pleasing tool handle," or a "connecting link" between two functional ends [Doc. 35, p. 5]—a position that failed in Federal Circuit case precedent, and should also fail here. Plaintiff seeks to substitute vague and undefined terms like "unified, "balanced," "simple elegance," "solid grip area," and "symmetry" for the clear and unmistakable ornamental features shown in his '646 patent claim. This does not create a genuine issue of material fact. This Court should not allow Plaintiff's overreaching to go any further.

Plaintiff's opposition fails to address, much less rebut, Defendants' showing as provided in Fed. R. Civ. P. 56 that the ornamental features of the accused Spinning Impact Extensions comprise an overall design that is plainly dissimilar from and does not infringe the '646 patent tool handle. Unable to rebut the numerous visual dissimilarities, Plaintiff does not even attempt to perform *any* side-by-side comparison of the visual images of the '646 patent and Spinning Impact Extensions or point to any ornamental features that he thinks are the same using the photographs and product samples [Doc. 30-7] on file with the Court.

Plaintiff cannot even bring himself to articulate anywhere in his arguments on the infringement question what are the ornamental features of his '646 patent design,[1] let alone provide any admissible evidence that a trier of fact could rely on to find that those unexplained, ornamental design features are present in the accused product. [Doc. 35, pp. 1-5]. Plaintiff's infringement claim fails based on the undisputed facts, because he has not carried his burden to show by a preponderance of the evidence that a reasonable trier of fact could find that the

---

[1]This is peculiar since in fewer than 50 words the parties agreed on how to describe the seven features found in the claimed design which they believe are ornamental or functional. *See Joint Proposed Claim Construction Statement* [Doc. 29, §B ("Agreed Ornamental and Functional Features;") pp. 1-2].

ordinary observer, familiar with the prior art, would be deceived by reason of common ornamental features into thinking the '646 patent and the accused product were the same. Further, the '646 patent is invalid for anticipation and obviousness in view of the many prior art tool handle references showing all the ornamental features of the '646 patent design.

<u>ARGUMENT</u>

**I.      Plaintiff Does Not Support His "Facts in Dispute" or Refute Defendants' Undisputed Facts, With Specific Citations to *Evidence* Per S.D. Ind. L.R. 56-1.**

In his opposition, Plaintiff does not point to any evidence to rebut what Defendants showed in their motion[2] or have supporting facts to show that summary judgment is inappropriate. While Plaintiff's opposition includes a seven bullet point "Statement of Material Facts in Dispute" [Doc. 35, pp. 1-2], his bullet points are not supported with citation to *evidence* in the record as required by S.D. Ind. L.R. 56-1 (e) & (f)(2). He fails to provide any sworn affidavits, documentary evidence, or other papers to properly support his bullet points or to contradict the facts that Defendants asserted in their motion as required by Fed. R. Civ. P. 56(c). Plaintiff instead offers only *ipse dixit* and mischaracterizations of Defendants' position. Thus, his bullet points do not constitute "potentially determinative facts" or "fact disputes" at all as required by Local Rule 56-1(b).

Plaintiff's first four bullet points concern the issue of functionality and attempt to create disputes where there are none. Defendants do not contend, as Plaintiff argues, that the Court should regard the cylindrical front end portion (Item 2), or the knurled handle (Item 5), or the tapered back end (Item 6), as "functional." In the parties' Joint Proposed Claim Construction Statement, Defendants asserted just the opposite—that they are <u>ornamental</u>:

---

[2]Plaintiff has not refuted the "Statement of Material Facts not in Dispute" submitted by Defendants [Doc. 33, pp. 1-8], with specific citations to evidence in the record or showed that Defendants' citation does not support Defendants' facts. Defendants' Statement is therefore deemed admitted and this Court can grant summary judgment. S.D. Ind. L. R. 56-1(f)(1); Fed. R. Civ. P. 56 (e)(2), (3).

"To the extent that a feature has both functional and ornamental aspects, *Defendants assert that the feature should be treated <u>as ornamental</u> and part of the design patent claim.*"

[Doc. 29, p. 2] (emphasis added).[3] Nor have Defendants  asserted that the '646 patent claim design is "primarily functional," as Plaintiff contends, or sought to invalidate the patent on functionality grounds. *Id.*[4] The only two aspects of the design that Defendants, and Plaintiff, contend are purely functional and should be factored out of the design are the (male) square drive on the front end (Feature 1) and the (female) square drive on the back end (Feature 7). [Doc. 29, pp. 1-2, Doc. 31, p. 3, Doc. 34, p. 8]. The parties agree the Court should treat the remaining five features identified by the parties as ornamental and part of the patent claim. [Doc. 29, pp. 1-2].

Plaintiff also presents his "Statement of Material Facts in Dispute" [Doc. 35, pp. 1-2] as the ultimate issues before the Court rather than as "facts"—*e.g.*, whether the Spinning Impact Extensions infringe the '646 patent (fifth bullet point) and whether the prior art invalidates the '646 patent (sixth bullet point). The parties' disagreement over the infringement and invalidity questions, however, are matters the district courts routinely resolve on summary judgment, and not at trial. *See*, *e.g.*, *Fanimation, Inc. v. Dan's Fan City, Inc.*, Case No. 1:08-cv-1071-TWP-WGH, 2010 U.S. Dist. LEXIS 134526 * 7 (S.D. Ind. Dec. 16, 2010) (granting summary judgment confirming non-infringement of two design patents even though "the significance" of the "differences" between the patented and accused product was "hotly contested."), *aff'd*, 444 F. App'x 449 (Fed. Cir. 2011).

_____

[3]The issue of functionality of a design patent claim relates to claim construction, and it is the Court's role to distinguish the ornamental from the functional features. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 680 (Fed. Cir. 2008) (en banc) (citing *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1998)). Thus, although claim construction may involve underlying factual issues, it is ultimately a legal issue decided by the Court, not by a fact finder at trial. *Id.* at 679-80.
[4]In *High Point Design LLC v. Buyer's Direct, Inc.*, 730 F.3d 1301, 108 U.S.P.Q.2d 1183 (Fed. Cir. 2013), the Federal Circuit stated that a design patent can be declared invalid if the claimed design is "primarily functional" rather than "primarily ornamental," *i.e.*, if the claimed design is "dictated by the utilitarian purpose of the article." Although Defendants contend Features 2, 5 and 6 have functional <u>uses</u>, Defendants do <u>not</u> contend that the design of these three features is "dictated by the utilitarian purpose of the article."

3

Plaintiff's seventh and final bullet point cites the informal "poll" he took of a couple of dozen persons at auto parts stores where he "had sold [his] Pa-Zee™ Grip" tool. [Doc. 35-1, pp.1-3]. This is not an admissible **ordinary observer** survey. Plaintiff's handwritten letter to his attorney dated September 19, 2011 with list of signatures attached [Doc. 35-1, pp. 1-3] is not a declaration under oath and is inadmissible as evidence.[5] Defendants therefore object to the Court's reliance on Plaintiff's letter and poll on summary judgment. Even if for the sake of argument the Court could consider Plaintiff's letter/poll, it does not create a genuine issue of material fact on the non-infringement issue as shown in Defendants' opening brief [Doc. 33, pp. 24-25], and as discussed, *infra*, in Section II.E.

## II.  Defendants Do Not Infringe the '646 Patent

### A.  Under the Controlling Law, No Reasonable Jury Could Conclude That the Spinning Impact Extensions Infringe the '646 Patent.

Although Plaintiff contends "design patent infringement is a question of fact" [Doc. 35, p. 2], as Defendants have explained, because design patents have limited scope the courts frequently dispose of design patent cases on summary judgment where, as here, there are no genuine issues of fact regarding the accused Spinning Impact Extensions as manifested by the incontestable factual structure and ornamentation in the photographs and products samples in the record. [Doc. 33, §II, p. 9 (citing cases); Doc. 30-7 (Notice of Filing of product samples)]. The question of infringement therefore collapses into claim construction which is a matter of law for the Court and is amendable to summary judgment. *See Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed. Cir. 1996).

As already discussed [Doc. 33, §§B-C, pp. 19-23], there are many stark differences between the Spinning Impact Extensions and the '646 patent design, shown side-by-side, below.

---

[5]Unsworn statements do not meet the requirements of Fed. R. Civ. P. 56(e) and cannot be considered by a district court in ruling on a summary judgment motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n. 17, 90 S.Ct. 1598, 1608 n. 17, 26 L.Ed.2d 142 (1970); *Egger v. Phillips*, 710 F.2d 292, 311 n. 19 (7th Cir. 1983), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983).



**'646 Patent – FIG. 1**                    **Spinning Impact Extension**

The Spinning Impact Extension does not infringe the '646 patent because it creates a very different overall visual impression since it lacks the significant focal points of the claimed patent design. Most notably, as Defendants have shown, the differences between the two tool handle designs include the following prominent ornamental features of the '646 patent claim which are missing from the accused product:

(1)  The handle:  The extent to which the surface area of the handle is covered by knurling is significantly different in the two designs. In the '646 patent, the handle is dominantly and seamlessly knurled along its *entire* length. The accused product handle in contrast is not knurled across its entire length, but displays two prominent unknurled handle end portions, each of which contains a distinctive unknurled channel that create different focal points from the '646 patent.

(2)  The back (left) end:  The back (left) ends of the two tool handles have a very different shape from each other. The back end of the '646 patent is strikingly beveled or tapered whereas the accused product's back end is straight-edged without a bevel or taper (and has an extension protruding therefrom). The differences in back ends give off a very different visual impression.

(3)  The front (right) end:  The front (right) ends of the tool handles have a significantly different shape from each other. In the '646 patent, immediately to the right of the handle's front end is a conspicuous reduced diameter portion. By contrast, an extension shaft protrudes immediately from the left end of the accused product's handle without a reduced diameter portion.

(4)  The reduced diameter portion on the front (right) end of the '646 patent transitions (moving from left to right) to a distinct and unmistakably tapered portion, followed by a short extension shaft. The accused product unlike the '646 patent has a blunt, straight-edged right end with no reduced diameter portion and no tapered portion, and also a proportionally longer extension shaft.

[Doc. 33, §§B-C, pp. 19-23].

Collectively, the overall impression of these distinct, ornamental dissimilarities decimates Plaintiff's claim for infringement, and his failure to even discuss these differences in his opposition exposes that Plaintiff *cannot* rebut them. For example, having acknowledged in his *Markman* brief that the beveled or tapered back end (Feature 6) "is an ornamental flourish, a non-functional aspect that was added to give the tool a distinctive appearance," [Doc. 34, p. 7], Plaintiff makes no effort to address the glaring absence of this ornamental feature from the accused product.

To find that the Spinning Impact Extensions infringe Plaintiff's '646 patent would require that an ordinary observer would overlook every single one of the above-described ornamental differences between them, thus protecting the basic design concept. Such a result goes against clear Federal Circuit case precedent.[6] It is readily apparent without reference to the prior art that an ordinary observer could not possibly overlook these clear differences in shape and ornamentation between the two tool handles and would <u>not</u> be deceived into believing the Spinning Impact Extensions are the same as the '646 patent design. *See*, *e.g*, *Fanimation*, 2010 U.S. Dist. LEXIS 134526, *5-6, 14 (noting that in some cases "a comparison to the prior art may not be necessary" and finding "[w]ithout further analysis, the Court can find that the hypothetical ordinary observer would *not be deceived* into believing that the accused product is the same as the patented ['683 patent] design.") (emphasis in original). No reasonable jury could find otherwise, and a jury trial is not required to resolve these issues.

As established in Defendants' opening brief, this conclusion is even more apparent when the uncited prior art, shown below, is considered.  [Doc. 33, pp. 22-24, 27-35]; *see, e.g.*,

---

[6]*See, e.g., Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1189 (Fed. Cir. 1988) (court looked beyond the overall configuration, and focused on the specific ornamental shape and surface ornamentation of Lee's functional handle and wooden ball); *OddzOn*, 122 F.3d at 1405 (Federal Circuit confirmed district court's holding that general configuration of a foam football with a tail and finds was functional and looked only at the ornamental aspects of the design).

*Fanimation*, 2010 U.S. Dist. LEXIS 134526, *7-13, 14-15 (reviewing prior art to the '450 design

patents to help "divine the significance of the differences" from the accused product).

**'543 patent (*Kress*) – Figure 4**



**Williams M-110 (embodiment of *Kress*)**



**'165 patent (*Wolfe*) - Figure 1**



**'069 patent (*White*) - Figure 1**



**Snap-On SG-6**                                    **'402 patent (*Mandl*)- FIG 2a**

                                

The uncited prior art USPN 2,071,543 to Kress ("the '543 patent"), which issued in 1937, and its

commercial embodiment, the uncited prior art Williams M-110 extension handle, which was

publicly available in the U.S. as early as 1955 [Doc. 33, p. 5 & nn.8-9], shown above, disclose

almost all the ornamental features of the '646 patent. The '543 patent and M-110, for example,

disclose a tool handle with a knurled main cylindrical body. The '543 patent and M-110 also

disclose an unknurled extension housing with a reduced diameter portion on the front end of the

main cylindrical body that tapers to an extension of the right end of the tool. In addition, the rear

end of the tool disclosed in the '543 patent and M-110 appears to be beveled.

The uncited prior art USPN 3,650,165 to Wolfe ("the '165 patent"), which issued in 1972

[Doc. 33, p. 5 & n.10], shown above, also discloses a tool handle with a knurled main cylindrical

body. The '165 patent also discloses an unknurled portion on the right end of the main

cylindrical body that tapers to an extension of the right end of the tool. In addition, the right end

of the tool discloses a short extension.

The uncited prior art Snap-On® SG-6, which was described in a printed publication and

on sale in the U.S. as early as 1930, and the uncited USPN 1,775,402 to Mandl (the "*Mandl*

patent"), which issued in 1930 [Doc. 33, p. 6 & nn.12-13], shown above, include a knurled main

cylindrical body. The SG-6 also has a tapered right end. Finally, the uncited prior art USPN

8

3,575,069 to White, which issued in 1972 ("White") [Doc. 33, p. 5 & n.11], shown above, reveals a knurled handle, and a tapered front end, and a square docket drive on the front end.

The hypothetical ordinary observer would be conversant in this mature and crowded prior art and know that using cylindrical tool handles with knurling, front ends with reduced diameter and tapered portions, and back ends with rounded or beveled edges were old techniques in the prior art. *See, e.g. Fanimation*, 2010 U.S. Dist. LEXIS 134526, 10-15. In view of the prior art, the ornamental differences between the '646 patent and the accused Spinning Impact Extensions are even more conspicuous. *See id.* at *9 (finding "the differences between the accused product and the *'450 patent* even more pronounced" in view of the "relatively cluttered prior art" fan blade designs). In light of the prior art, the '646 patent cannot be broadly construed because to do so would broaden Plaintiff's patent to cover all tool handles using these old prior art techniques. *See id.* at *15; *Minka Lighting, Inc. v. Maxim Lighting Int'l, Inc.*, 2009 U.S. Dist. LEXIS 20948, *17-18 (N.D. Tex. Mar. 16, 2009) (no infringement where similarities between accused and patented designs were no greater than similarities between the patents and the prior art).

### B.      Plaintiff Is Limited to His Tool Handle Design Claimed in the '646 Patent, and His Overbroad Infringement Position Is Contrary to the Patent Laws.

Plaintiff's infringement argument boils down to a broad assertion that any tool handle with the same general configuration of components shown in his '646 patent constitutes an infringement. [Doc. 35, p. 5]. Plaintiff's position is simply wrong. "[T]he scope of design patent is exceedingly limited." *Fanimation*, 2010 U.S. Dist. LEXIS 134526, *11 (citing *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995)). All that is protected by the '646 patent is the particular ornamentation and colorable imitation of the specific shapes and surface ornamentation claimed in the design—something Defendants by their Spinning Impact Extensions plainly do not import, make, use, offer to sell, or sell. *See Lee*, 838 F.2d at 1189.

Plaintiff implies that Defendants have gone too far in their analysis of "minute differences" between the '646 patent and Spinning Impact Extension designs, which is simply not the case. [Doc. 35, p. 5]. Yet in his opposition, Plaintiff goes to the opposite extreme. He reduces the '646 patent claim to a mere "visually pleasing tool handle" or "connecting link" between functional square drive ends and ignores all the ornamental components of the '646 patent. *Id.* [7] No case holds that vague and undefined concepts like "visually pleasing," "balanced," "simple elegance," or "unified," relied on by Plaintiff [Doc. 35, p. 5] are to be substituted for the clear and specific design features shown in the '646 patent drawings. In fact, the case law is directly to the contrary. *See supra* at p. 10 & n. 8 (citing cases). Even assuming for the sake of argument that these adjectives properly described the '646 patent design, which is legally irrelevant, Plaintiff does not have a patent on all "visually pleasing," "balanced," "simply elegant," or "unified," tool handles. Plaintiff has a patent only on the specific ornamental design shown in his '646 patent. *See OddzOn*, 122 F.3d at 1405 (the Court must limit "the scope of the patent to its overall ornamental visual impression, rather than to the broader design concept.").

Significantly, while Plaintiff argues that all the dissimilar ornamental features in this case are simply "minute differences," these features, when viewed in their totality, result in two sufficiently dissimilar designs such that "the accused design could not reasonably be viewed as so similar to the claimed design that a purchaser familiar with the prior art would be deceived by

---

[7]In *Egyptian Goddess*, far from characterizing these as "minute differences," as Plaintiff does, the Federal Circuit provided examples of *individual features* a court could properly consider under the ordinary observer test. 543 F.3d at 680-81. The Court ultimately ruled there was no infringement even though "the general shape of the accused nail buffer at issue . . . is the same as that of the patented buffer design." *Id.* at 680; *see also Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010) (finding that the lower court properly took into consideration that the patented design of a tool featured a standard shaped hammer-head, a diamond-shaped flare near the crow-bar and the top of the jaw, teeth only on the bottom side of the jaw, a rounded neck, a crow-bar that faces the same direction as the hammer-head, and a plain, undecorated handle); *Competitive Edge, Inc., v. Staples, Inc.*, 763 F. Supp.2d 997, 1011-12 (N.D. Ill. 2010) (granting summary judgment for defendants, finding no infringement of the design of a calculator, based on a side-by-side comparison of features such as scalloped edges versus smooth edges, hour-glass shape versus block-rectangular shape, inclusion of a removable name plate, indented circles on accused design's keys, and recessed display screen in patented design, because no reasonable jury could find plaintiff met its burden when considering all the distinctions together in the context of ornamental design), *aff'd without opinion*, 412 Fed. Appx. 304 (Fed. Cir. 2011).

the similarity between the claimed and accused designs, 'inducing him to purchase one supposing it to be the other" *Egyptian Goddess*, 543 F.3d at 683 (quoting *Gorham Co. v. White*, 81 U.S. 511, 528, 20 L.Ed. 731 (1871)). Included in such alleged "minute differences" are a tool handle that is prominently and seamlessly knurled along its *entire* length, that has a striking beveled or tapered back end, and that has a front end with a conspicuous reduced diameter portion and a tapered portion—features which are absent from the accused product.

### C.   Unlike Plaintiff, Defendants Properly Apply the Ordinary Observer Test to the Ornamental Aspects of the '646 Patent and Accused Product.

The infringement comparison is to be done looking at the '646 patent design as a whole; but the entire claim construction and infringement analysis is not conducted in a vacuum, as Plaintiff has done in his opposition, with no reference whatsoever to the contributions made by the individual components. *See, supra*, p. 10 n. 8 (citing cases).  Plaintiff's argument is really an effort to *avoid* a true comparison of the ornamental aspects of the two tool handles. No case holds that differences between individual, ornamental features of a patented design and accused design are to be ignored. The Federal Circuit has made clear that "differences" between patented and accused designs are not irrelevant. Courts should take into account similarities ***and*** differences" in determining whether the ordinary observer test for infringement has been satisfied. *FMC Corp. v. Hennessy Indus.,*, 836 F.2d 521, 527 (Fed. Cir. 1987) (emphasis in original). "The mandated overall comparison is a comparison taking into account significant differences between the two designs." *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1243 (Fed. Cir. 2009). "[A]ll of the ornamental features illustrated in the figures must be considered in evaluating design patent infringement." *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1378 (Fed. Cir. 2002). The Court should perform "a detailed side-by-side comparison between the patented design and the accused design." *Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1327 (Fed. Cir. 2007).

Defendants performed an infringement analysis that is fully consistent with the ordinary observer test set forth in *Egyptian Goddess*. First, Defendants disregarded the functional aspects of the '646 patent design and Spinning Impact Extensions:  their respective front (male) and back (female) square drive ends. (Features 1 and 2). [Doc. 29, p. 2, 13-14]. Second, Defendants compared the overall ornamental design of the '646 patent design and accused product as a whole. Defendants performed the second step, as required by *Egyptian Goddess*, by the correct comparison between the actual '646 patent figures disclosing all the ornamental features of the patented design to actual photographs and product samples of the accused Spinning Impact Extensions in all views. [Doc. 33, §§ B-E, pp. 19-24]. Defendants compared the tool handles' overall ornamental profiles, shapes, and surfaces, while highlighting dissimilarities that are highly visible to the ordinary observer. Defendants also made their comparisons in light of the prior art, including the prior art tool handles identified above and elsewhere in Defendants' motion papers. *See id.* As this prior art shows, any superficial similarities, if any, between the parties' designs are due entirely to both parties' use of common features borrowed from the prior art. Plaintiff has chosen not to challenge this analysis with any contrary *evidence*. [Doc. 35].

### D.    An Ordinary Observer Would Not Find Substantial Similarities Between the '646 Patent Design and the Spinning Impact Extensions.

In his opposition, Plaintiff's counsel now tries to discredit their client's own definition of the ordinary observer. In his answer to Interrogatory No. 2, Plaintiff stated:

> "The ordinary purchaser is an individual familiar with the selection and use of tools who has previously purchased a wide range of tools and owns at least one socket set and would observe and purchase this tool as a specialized accessory."

[Doc. 30-6, pp. 6-7]. Defendants' industrial design expert Professor Kemnitzer agrees with this definition. [Doc. 30-2, ¶ 32, p. 13; Doc. 30-3, ¶ 1, p. 12]. This uncontroverted evidence dooms Plaintiff's infringement claim since such an ordinary observer would have a keen eye and would be capable of forming a reasonable judgment when confronted with a tool handle design as to

12

whether it presents to his or her eye distinctiveness from or similarity with those tool handles which came before it. *See Fanimation*, 2010 U.S. Dist. LEXIS 134526, 10, 15.

In an effort to downplay the significant differences between the '646 patent and Spinning Impact Extensions, Plaintiff's attorneys now speculate, without citation to *any* facts in the record, that the ordinary observer "would not generally give great attention to" and "would be less likely to pay close attention" to differences between the patented and accused tool handles. [Doc. 35, pp. 4-5]. *Gorham*, 81 U.S. at 527. There is no *evidence*, however, for this unsupported statement or that an ordinary customer of even *average* acuteness familiar with the prior art would purchase a tool handle without due care and consideration and examine all ornamental features of the product. "As a general matter, the hypothetical ordinary observer while perhaps not persnickety, is more discerning than [plaintiff] portrays. This ordinary observer is conversant in the prior art and examines *all* features of the product. *Fanimation*, 2010 U.S. Dist. LEXIS 134526, *10-11 (emphasis in original) (citing *Int'l Seaway*, 589 F.3d at 1241).

E.    **Plaintiff's "Poll" is Not a Litigation Survey or Scientific Sampling, and it Does Not Create a Genuine Issue of Material Fact on Non-Infringement.**

Plaintiff cites his informal poll of 28 persons at customer accounts where he sold his Pa-Zee Grip tool handle—a cadre of acquaintances that cannot be considered disinterested.[8] He then jumps to the conclusion that Defendants somehow have not carried their burden to show an absence of evidence to support an element of Plaintiff's design patent infringement case because they did not present their own survey. [Doc. 35, p. 2 & Ex. A (Doc. 35-1, pp. 1-3)].

---

[8]Plaintiff refers to his poll as a "Ben Franklin Balance Sheet"—sometimes used by sales people to help clients make yes or no decisions. This is not a generally accepted and relied on method in the field of designing and administering consumer surveys. As already explained [Doc. 33, pp. 24-25 & nn. 21-22], it does not meet even the basic, accepted standards for litigation surveys set out in *Manual for Complex Litigation* § 11.493 (4th Ed. 2004). For example, the stated objective is poorly crafted and open to different interpretations; it does not employ independent and trained interviewers; the sample size is inadequately small; the universe is not relevant and is biased; there are no double-blind safeguards; there was no probing (*e.g.*, "Why did you say that? What are all the reasons you thought that?); and there was no independent validation of all the persons polled.

Defendants discharged their initial responsibility as movants of informing the Court of the basis for their summary judgment, and identified those portions of the record which demonstrate the absence of a genuine issue of material fact to support Plaintiff's infringement case. [Doc. 33, pp. 1-26]; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In particular, Defendants established that in the eye of the ordinary observer the overall impressions of the '646 patent and Spinning Impact Extensions are substantially different. [Doc. 33, pp. 19-24]. Consequently, it is incumbent on Plaintiff, who has the trial burden to prove design patent infringement, to establish that there is a genuine issue of material fact for trial.

Suffice it to say that Plaintiff's defective poll does not meet his Rule 56(c) burden to show a genuine issue of material fact on the non-infringement issue, or to shift any burden back to Defendants to come forward with different "survey" evidence. *OddzOn*, 122 F.3d at 1405-07 (reviewing expert testimony, consumer surveys, and other evidence, and affirming grant of summary judgment of non-infringement since none of evidence attributed any confusion between the products to the ornamental features of the claimed design). Plaintiff's "poll" does not even consist of any *questions* but instead just the following leading, closed-ended statement that insinuates Plaintiff's own judgment:  "If you belive (sic) both unit. [sic] are the same" followed by two columns headed "Yae" (sic) and "Nae" (There is no "no opinion" or "don't know" option). As in *OddzOn*, Plaintiff's poll is flawed because it did not even ask whether the respondents believed the products to be "the same" because of the specific ornamental features, as opposed to the more general overall similarity in terms of the functional parts.[9] *See* 122 F.3d at 1406-07; *Puritan Bennett Corp. v. Penox Techs., Inc.*, IP 02-0762-C-M/S, 2004 U.S. Dist. LEXIS 6896, *75-78 (S.D. Ind. Mar. 2, 2004) (McKinney, J.) (finding expert survey evidence

---

[9]Plaintiff's poll is flawed for the additional reasons that the test for infringement involves the "hypothetical ordinary observer"—not actual persons at customer accounts where Plaintiff old his Pa-Zee Grip. Further, under *Egyptian Goddess*, the hypothetical ordinary observer would also need to be conversant with all prior art, and there is no *evidence* that any of the persons polled by Plaintiff are so conversant.

insufficient to create a genuine issue of material fact as to design patent infringement to

overcome summary judgment of non-infringement), *aff'd*, 2005 U.S. App. LEXIS 2757, *75-78

(Fed. Cir., Feb. 17, 2005).  Plaintiff's poll therefore even if considered does not create a genuine

issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("A mere

scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

evidence on which the jury could reasonably find for the plaintiff.").

### III.    The '646 Patent is Invalid

On the one hand, Plaintiff argues that "the patented design is quite dissimilar from the

prior art." [Doc. 35, p. 4).  On the other hand, Plaintiff contends that "the accused device adopts

the overall appearance of the patented design."  *Id.* But simple side-by-side inspection of the '646

patent, the prior art, and accused product, shown above in Section II, reveals that Plaintiff cannot

have it both ways.  If the accused product presents a common visual appearance to the patent

design to infringe, as Plaintiff contends, then the prior art is even closer to the '646 patent design.

Defendants have established that the prior art is deceptively similar to the invention

claimed in the '646 patent—in the eyes of an ordinary *observer* (for anticipation) and the

ordinary *designer* (for obviousness).  [Doc. 35, pp. 26-35].[10]  Plaintiff states, without legal

support, that "the proper analysis relies on determining what an ordinary observer would think."

[Doc. 35, p. 5; *see also id.*, p. 3 ("The same ordinary observer test is applied to test for invalidity

of a design patent." (citing *Int'l Seaway*, 589 F.3d at 1430)[11]].  This statement is only half true.

---

[10] Plaintiff contends Defendants' invalidity analysis is based on "attorney argument." [Doc. 35, p.5]. On the contrary, the Defendants' invalidity arguments are based on a proper analysis of the prior art in the record, combined with the expert testimony of Professor Kemnitzer, an industrial designer. [Doc. 33, pp. 26-35; Doc. 30-2].

[11] As discussed, *infra*, the "ordinary designer"—not the "ordinary observer" test applies to obviousness under § 103.  As the Federal Circuit stated in *High Point*,
> we do not believe our decision in *International Seaway* [citation omitted]
> cited by the district court compels a contrary conclusion. The

As established in Defendants' brief, the Federal Circuit has established the same "ordinary observer" test for anticipation under § 102, as for infringement. *Int'l Seaway Trading*, 589 F.3d at 1240.  For obviousness, on the other hand, the proper standard "must . . . be assessed from the viewpoint of an **ordinary designer**," not an "ordinary observer." *High Point*, 108 U.S.P.Q.2d at 1192 (finding district court's § 103 analysis incorrectly used an "ordinary observer" standard). [Doc. 33, p. 30].

 a. *Kress*/M-110 – Anticipation

Plaintiff quibbles about what he perceives as differences between the '646 patent and the prior rat design shown in Kress. [Doc. 35, pp. 6-7]. Chief of these perceived "differences" is the fact that Kress has a longer "Cylindrical Front End Portion," which Plaintiff argues "accounts for the majority of the Kress/M-110 product." Id., p. 7.  One skilled in the art, however, would recognize that the "Cylindrical Front End Portion" of either tool is essentially an extension.



Common socket size. Common overall length. Common overall diameter.

Extensions, by definition, come in a variety of lengths. [Doc. 33, p. 32]. If, as Plaintiff is suggesting, a tool handle exactly like that disclosed in the '646 patent, but with a different length "Cylindrical Front End Portion," would not anticipate the patent, then, as shown in the proportional comparisons, immediately to the left, Defendants' Spinning Impact Extensions cannot infringe the '646 patent as there is no configuration in which the "Cylindrical Front End Portion" is the same length as that shown in patented design.  This is the corollary of the well-settled axiom:  "That which infringes if later

---

  *International Seaway* court may in fact have had the 'designer of ordinary skill' standard in mind when it used the term 'ordinary observer.' In any event, the court could not rewrite precedent setting forth the designer of ordinary skill standard." (citations omitted).

*High Point*, 108 U.S.P.Q.3d at 1193.

anticipates if earlier." *See Polaroid Corp. v. Eastman Kodak Co.*, 789 F.2d 1556, 1573, 229 USPQ 561, 574 (Fed.Cir.1986) (citing *Peters v. Active Mfg. Co.*, 129 U.S. 530, 537, 9 S.Ct. 389, 32 L.Ed. 738 (1889)).

Plaintiff also contends the knurling is different in the patented and prior art designs. [Doc. 35, p.7]. The knurling shown in *Kress* and the M-110, however, is nearly identical to that shown in the '646 patent (*See* table next page).  Both the patented and prior art tool handles have relatively deep, sharp knurling. Both have knurling covering substantially the entire tool handle, with the exception of the tapered end.  In contrast, the knurling on the accused Spinning Impact Extensions is much smoother and shallower. In addition, as established, the main body of the accused product is not knurled along its entire length. Plaintiff cannot have it both ways, either (1) the knurling on the prior art M-110 anticipates the knurling in the '646 patent, or (2) the accused product does not infringe, or (3) both.



Pa-Zee Grip Tool          '646 Patent, Fig. 3          M-110          Kress

Accused Product

**b.    *Wolfe* - Anticipation**

Plaintiff points to what he conclusorily labels "significant variations" between the claimed '646 patent design and the prior art Wolfe such as a separate handle. [Doc. 35, p. 8]. As demonstrated, tools with and without handles, and those with removable handles, are common in the tool world. [Doc. 33, p. 33]. The ordinary observer who is conversant in this prior art, *Fanimation*, 2010 U.S. Dist. LEXIS 134526, * 10-11, viewing two substantially identical tools— one with and one without a handle—would be deceived into thinking one to be the other, or that they are simply different models of the same tool. *Id.* (citing Kemnitzer Decl.).

Plaintiff also argues that "[t]he knurled portion of the '646 patent extends all the way to the tapered end; in contrast, the *Wolfe* design stops less than half way short of the tapered

end…." [Doc. 35, p. 8]. Again, the main body of the accused Spinning Impact Extensions is not knurled along its entire length, but rather has an unknurled, decorative band with a channel at each end. Plaintiff cannot have it both ways, either (1) the knurling in *Wolfe* anticipates the knurling in the '646 patent, or (2) the accused product does not infringe; or (3) both.  Plaintiff also argues that "the *Wolfe* design is also missing the rear [female square] adapter shown in the '646 Patent." [Doc. 35, p. 8].  The parties have stipulated, however, that the "rear adapter"is purely functional and is not relevant to the analysis of a design patent. [Doc. 29, pp. 2-3].[12]

     **c.**    ***Kress* and *Wolfe* – Obviousness**

Plaintiff's arguments with respect to design, as opposed to function, are semantic and another red herring.  [Doc. 35, pp. 8-9]. Plaintiff seems to be suggesting that an ordinary designer, *i.e.*, one who ordinarily designs tools and is familiar with tools and their manufacture, would not think that creating the same tool with different length shafts would not be obvious. As shown above, however, extensions (the shaft referred to by opposing counsel is essentially an extension) come in a variety of lengths. [Doc. 33, p. 32]. As a result, an ordinary designer viewing essentially identical tools, but for the length of the shaft, would assume that they were simply different models of the same tool.  Plaintiff also argues, without basis, that Defendants statements are conclusory with respect to combining *Wolfe* and *Kress* to invalidate the '646 patent. [Doc. 35, p. 9]. In fact, Defendants have articulated with clear and convincing *evidence* both the factual and legal bases on these points, including declaration testimony from Professor Kemnitzer who is, himself, a *tool designer* and one of ordinary skill in the art [Doc. 33, pp. 33-

---

[12] Plaintiff also incorrectly argues that Defendants employ the rejected "point of novelty," analysis, instead of the ordinary observer analysis. [Doc. 35, p. 6].  To the contrary, Defendants' comparison of the overall designs of the 646 patent and prior art tool handles, taking into consideration all of their ornamental features, is consistent with the anticipation analysis mandated by the Federal Circuit.  Plaintiff also wrongly accuses Defendants of conducting an "element-by-element" comparison of the 646 patent and the prior art for the purpose of their invalidity analysis. [Doc. 35, p. 6].  The fact that anticipation of a design patent is not conducted on an "element-by-element" basis, does not mean that the Court should not consider the various elements or features of the 646 patent and prior art tool handle designs as part of the whole.

35]. These combinations require so little modification (*e.g.*, *Kress*/M-110 requires little more than a shorter shaft and discloses substantially all of the remaining features), that the Court can find obviousness by direction visual comparison and without expert testimony.  [Doc. 33, p. 31 (citing cases)].

## CONCLUSION

Accordingly, this Court should grant summary judgment of non-infringement and invalidity of the '646 patent.

Respectfully submitted this 18th day of February, 2014.

By: /s/ *John M. Bowler*
John M. Bowler, Esq.
Georgia Bar # 071770
Troutman Sanders LLP
600 Peachtree St. NE, Suite 5200
Atlanta, Georgia  30308-2216
Phone: (404) 885-3190
Fax: (404) 962-6513
john.bowler@troutmansanders.com

James W. Riley, Jr., Esq.
Indiana Bar # 6073-49
Riley Bennett & Egloff, LLP
141 East Washington Street, Fourth Floor
Indianapolis, Indiana  46204
Phone (317) 636-8000
Fax:  (317) 955-2158
JRiley@rbelaw.com

**Attorneys for Defendants Balkamp Inc.,
Genuine Parts Company, and National
Automotive Parts Association**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KENNETH BUTLER, SR., | \| |
| | \| |
|      Plaintiff, | \| |
| | \|     No. 1:12-cv-01716-SEB-DML |
| vs. | \| |
| | \| |
| BALKAMP INC., | \| |
| NATIONAL AUTOMOTIVE PARTS | \| |
| ASSOCIATION, GENUINE PARTS | \| |
| COMPANY, et al., | \| |
| | \| |
|      Defendants. | \| |

---

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2014, I caused this *Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment of Non-Infringement and Invalidity of U.S. Design Patent No. D500,656 S* to be filed with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the all attorneys of record, including:

       Joseph J. Zito, Esq. (jzito@dnlzito.com)
       Benjamin C. Deming, Esq. (bdeming@dnlzito.com)


       /s/ John M. Bowler
       John M. Bowler