UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KENNETH BUTLER, SR. an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| BALKAMP INC., | ) | |
| NATIONAL AUTO PARTS | ) | 1:12-cv-01716-SEB-DML |
| ASSOCIATION, | ) | |
| GENUINE PARTS COMPANY | ) | |
| CORPORATION, | ) | |
| TIEN-I INDUSTRIAL CORPORATION, | ) | |
| LIMITED, | ) | |
| YUH YEOU INDUSTRY CO., LTD, | ) | |
| | ) | |
| Defendants. | | |

**ORDER ON PENDING MOTIONS**

This suit concerns the alleged infringement by Defendants Balkamp, Inc. ("Balkamp"), National Automotive Parts Association ("NAPA"), Genuine Parts Company Corporation ("Genuine Parts"), Tien-I Industrial Corporation, Limited, and Yuh Yeou Industry Co., Ltd. (collectively, "Defendants") of United States Design Patent No. D500,646 S ("the '646 patent") held by Plaintiff Kenneth Butler, Sr. ("Plaintiff" or "Mr. Butler"). This matter comes before the Court to construe certain patent terms relevant to the underlying infringement action and also for ruling on Defendants' Motion for Summary Judgment of Non-Infringement and Invalidity [Docket No. 31], filed on December 31, 2013.

**Factual Background**

**The '646 Patent**

Mr. Butler is the inventor and owner of the '646 patent, entitled "Tool Handle." The '646 Patent was issued on January 11, 2005, and is a design patent that claims the design for a tool handle that is used with socket wrench sets. The only claim of the '646 patent claims "[t]he ornamental design for a tool handle, as shown and described." The patent includes the seven figures pictured here as well as a cover page that includes a short description of each figure.



*Fig. 1*

2

**The Accused Product**

Balkamp is an Indiana corporation and subsidiary of Genuine Parts, which is a Georgia corporation specializing in replacement parts for cars. Balkamp distributes automotive aftermarket products in the NAPA Auto Parts System. NAPA is a Michigan nonprofit corporation whose parent is also Genuine Parts. Defendants sell tool handles under the name "Spinning Impact Extension" that Plaintiff alleges apply the patented design of the '646 patent or a colorable imitation thereof. Defendants' Spinning Impact Extension comes in three sizes, shown below:



¾" Drive – 10" Length (Part # 61-6725a)

**The Prior Art**

The scope and content of the prior art for the '646 patent is apparently not in dispute. During prosecution of the '646 patent, the Patent Office cited three U.S. design patents, shown below:



**D307,703**  **D319,562**  **D475,589**

The Patent Office also cited the following five U.S. utility patents during prosecution of the '646 patent, shown below:



**5,033,337**  **5,680,800**  **5,752,418**

**5,813,296**  **6,604,441**

4

The prior art also includes the following six uncited tool handle references, identified and shown below that were not before the Patent Office: (1) U.S. Patent No. 2,071,543, entitled "Revolving Grip Tool," filed September 14, 1935 and issued February 23, 1937 ("*Kress*"); (2) Williams M-110 Extension Handle, which is a commercial embodiment of *Kress*, publicly available as early as 1955 ("M-110"); (3) U.S. Patent No. 3,650,165, entitled "Ratchet Tool," filed November 21, 1969 and issued March 21, 1972 ("*Wolfe*"); (4) U.S. Patent No. 3,575,069, entitled "Ratchet and Speed Wrench Combination," filed July 29, 1969 and issued April 13, 1971 ("*White*"); (5) Snap-On® SG-6, which was described in a printed publication and on sale in the United States since at least 1930 ("SG-6"); and (6) U.S. Patent No. 1,775,402, entitled "Wrench Outfit," filed January 26, 1925 and issued September 9, 1930 ("*Mandl*").



*Kress*          M-110          *Wolfe*



*White*  *Snap-On SG-6*  *Mandl*

**The Instant Litigation**

On November 21, 2012, Mr. Butler filed a complaint against Defendants alleging that the Spinning Impact Extension infringes his '646 Patent. On December 3, 2013, the parties filed a joint claim construction statement and, on December 31, 2013, Defendants filed their initial *Markman*/claim construction brief as well as a motion for summary judgment of non-infringement of the '646 Patent. Defendants have also raised invalidity arguments as to the patent-in-suit. Additional facts are set forth below as needed.

## Legal Analysis

### I.   Claim Construction

Mr. Butler's claim is for the ornamental design of a tool handle, as shown and described in the '646 Patent. In their joint claim construction statement, the parties agreed that the '646 patent drawings disclose the following seven features:

6



| Element | Description |
|---|---|
| 1 | Front (male) square drive or Front adapter |
| 2 | Cylindrical extension shaft or Cylindrical front end portion |
| 3 | Tapered front end |
| 4 | Unknurled, reduced diameter front end or Untapered front end |
| 5 | Knurled handle or Knurled portion of the handle |
| 6 | Beveled or tapered back end |
| 7 | Rear (female) square drive or Square back adaptor |

The parties also agree that elements 1 and 7 described above, to wit, the front (male) square drive end and the rear (female) square drive end, are solely functional and that the remaining design features, elements 2 through 6, are either wholly, or at least primarily, ornamental.  It is well-established that design patents do not protect the

functional elements of the patented design, but rather only the design's "novel, ornamental features." *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) (citations omitted). "Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 680 (Fed. Cir. 2008) (en banc) (quoting *id.*). We agree with the parties that the '646 patent does not protect either the front or rear square drives of the tool handle because those aspects of the design are purely functional.

The parties disagree regarding the extent to which the Court should attempt to verbally describe the claimed design beyond merely delineating between the functional and ornamental aspects of the '646 patent. The Federal Circuit has often cautioned against "excessive reliance on a detailed verbal description" in design infringement cases such as this one. *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302 (Fed. Cir. 2010). Instead, "design patents are typically claimed according to their drawings, and claim construction must be adapted to a pictorial setting." *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1294 (Fed. Cir. 2010) (citing *id.* at 1302-03). Although district courts do maintain the discretion to perform a verbal claim construction when necessary under the circumstances, *Egyptian Goddess*, 543 F.3d at 679-680, we do not believe a detailed verbal construction is necessary here. Accordingly, having reviewed the patent and considering the guidance set forth in *Egyptian Goddess*, we adopt the following claim construction for the single claim of the '646 patent: "The ornamental design of a

tool handle, as shown and described, excluding the functional front and rear square drive ends." The construction includes the seven figures of the '646 patent as pictured *supra*.

## II. Infringement

"Design patent infringement is a question of fact, which a patentee must prove by a preponderance of the evidence." *Richardson*, 597 F.3d at 1295. The sole test for determining whether a design patent has been infringed is the ordinary observer test. *Egyptian Goddess*, 543 F.3d at 678. Under this test, a product is infringed if an ordinary observer, familiar with the prior art and giving such attention as a purchaser would usually give, "would be deceived into believing that the accused product is the same as the patented design." *Crocs, Inc.*, 598 F.3d at 1303 (citing *id.* at 681). Although patent infringement is a question of fact, "summary judgment may be appropriate when there is no genuine issue of material fact or when, drawing all factual inferences in favor of the nonmoving party, no reasonable jury could return a verdict for the nonmoving party." *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1332 (Fed. Cir. 2001) (internal citations and quotation marks omitted).

Courts must factor out the functional aspects of the design elements in assessing whether a design patent has been infringed, but in doing so, they "must not convert the overall infringement test to an element-by-element comparison." *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006). Rather, "[i]t is the appearance of a design as a whole which is controlling in determining infringement" and "[t]here can be no infringement based on the similarity of specific features if the overall appearance of the designs are dissimilar." *OddzOn Prods.*, 122 F.3d at 1405. In other

words, in evaluating infringement, the court determines whether "the deception that arises is a result of the similarities in the overall design, not of similarities in ornamental features in isolation." *Amini Innovation*, 439 F.3d at 1371.

The Federal Circuit has recognized that "[i]n some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer." *Egyptian Goddess*, 543 F.3d at 678. In such a case, the court may make a determination of non-infringement without comparing the claimed and accused designs with the prior art. In closer cases, however, examination of the prior art can be a particularly important tool in reaching an infringement determination. "[I]f the patent and the prior art are particularly close, the scale of comparison between the accused and patented design shrinks." *Wing Shing Prods. (BVI) Co. Ltd. V. Sunbeam Prods., Inc.*, 665 F. Supp. 2d 357, 361 (S.D.N.Y. 2009). Thus, "[w]here there are many examples of similar prior art designs … differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art." *Egyptian Goddess*, 543 F.3d at 678.

Here, a side-by-side comparison of the '646 patent design and the Spinning Impact Extension shows that the overall effect of the accused product is sufficiently distinct from the '646 patent design such that an ordinary observer would not be deceived into believing that the patented design and the accused product are the same. In the

illustrations below, the patented design is on the left and the accused product is on the right.



**'646 Patent Design**                           **Spinning Impact Extension**

It is true that there are certain similarities between the two products, including the cylindrical body of both tool handles with extensions protruding from the front end of the main body.  However, despite these general similarities, it is obvious when compared side-by-side that the Spinning Impact Extension has none of the significant focal point ornamental features of the '646 patent, and thus, creates a clearly distinguishable overall visual impression than the patented design.  The differences between the two products include:

> (1) *The knurled pattern*: Although both products have a main cylindrical body, the '646 patent is knurled along its entire length while there are two obviously unknurled portions of the accused product at each end of the cylindrical body, each of which contain a distinct unknurled channel that is not at all similar to the ornamental knurled design in the '646 patent.
>
> (2) *The beveled back end*:  Another feature of the '646 patent is the beveled or tapered back end of the tool handle.  The back end of the Spinning Impact Extension, however, not only is straight-edged with no taper or bevel, but also has an extension protruding from the back that is not shown in the '646 patent design.

> (3) *Design of the extension housing*:  Both the '646 patent and the accused product have extensions protruding from the cylindrical handle, but the ornamental features of the '646 patent's extension housing are clearly distinguishable from the Spinning Impact Extension.  Unlike the '646 patent design, which includes a reduced diameter cylindrical portion, a tapered portion, and a short extension shaft, the handle of the accused product has a blunt straight-edged end with no tapered section.  The accused product's extension shaft is also significantly longer than the patented design and protrudes directly from the main cylindrical handle as opposed to protruding from a tapered section like that shown in the '646 patent.

Focusing on the overall visual impression that the ornamental features of the '646 patent create, it is obvious that the accused product embodies an overall effect that is clearly dissimilar from that of the patented design and thus cannot cause confusion in the marketplace.  The patented design appears more compact and streamlined than the accused product due largely to the tapered design of the extension housing and shorter extension shaft as well as the beveled portion on the rear end of the handle, all of which create an overall impression of a tool handle with rounded, clean lines.  The accused product, on the other hand, appears more narrow and elongated overall as a result of the longer extension shaft without a tapered portion at the front end, coupled with the extension protruding from the back end of the accused tool handle that is not part of the '646 patent design.

The accused product also appears boxier and sharper overall because of the blunt, straight edges at both ends of the cylindrical body of the tool handle, which is in contrast to the tapered feel of the '646 patent design which gives the appearance of a smoother transition between the cylindrical main body and each end.  The straight edges of the accused design, coupled with the lack of knurling on each end of its cylindrical body

gives the visual effect of there being three distinct sections of the Spinning Impact Extension, while the tapered front and beveled back of the patented design gives the overall impression that it is one solid and unified piece.

In our view, the overall impression created by the '646 patent is sufficiently dissimilar from that of the Spinning Impact Extension that we need not reference the prior art in reaching our determination that the accused product does not infringe the '646 patent. However, were we to consider the prior art, it would buttress our conclusion that the '646 patent is not infringed by Defendant's product. Plaintiff argues that the dissimilar ornamental features discussed above are merely "minute differences," but the fact that the prior art for ornamental tool handles is fairly robust confirms that the ordinary observer, familiar with the prior art, would not view the differences between the Spinning Impact Extension and the patented design as "minute," taking note instead of those differences, and thus being less likely to confuse the accused product with the '646 patent design.

In short, it is true as Plaintiff argues that the patented design and the accused product share certain general similarities, to wit, they are both tool handles with unprotected functional front and back ends that have cylindrical main bodies with knurling located somewhere on the handle. But such a broad comparison ignores the specific ornamental features of the '646 patent. Moreover, if we were to limit our analysis to such a high scale level of comparison, numerous prior art tool handles would be included, as shown *supra*. Accordingly, for the reasons detailed above, we hold that

the accused product, Defendants' Spinning Impact Extension, does not infringe the '646 patent design.

## III.    Invalidity

Having found that Defendant's product does not infringe on the '646 patent, we turn next to the question of whether the validity issue has been rendered moot. Here, Defendants have raised the issue of validity only as an affirmative defense to Plaintiff's infringement claim and have not filed a counterclaim seeking a declaratory judgment of patent invalidity. Although Defendants included in their answer a prayer for relief that declares the '646 patent invalid, such a generalized, conclusory reference to invalidity is insufficient to constitute a counterclaim. Having found that the accused product does not infringe the '646 patent, we need not address Defendants' invalidity affirmative defense.[1] *See PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1368 (Fed. Cir. 2007) (holding that there it was unnecessary to address the defendant's arguments related to invalidity because the court's finding of non-infringement "moots any affirmative defense of invalidity").

## IV.    Conclusion

For the foregoing reasons, we hold that the accused product does not infringe the '646 patent. Accordingly, we GRANT Defendants' Motion for Summary Judgment as to the issue of infringement. Given our non-infringement finding, we do not address the issue of validity of the patent. Final judgment shall enter accordingly.

---

[1] Even if Defendants had properly filed an invalidity counterclaim, the Court, in its discretion need not address the invalidity argument, given our finding of non-infringement. *See Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 355 F.3d 1361, 1370-71 (Fed. Cir. 2004).

IT IS SO ORDERED.

Date: _____9/3/2014_____          _____
                                                 SARAH EVANS BARKER, JUDGE
                                                 United States District Court
                                                 Southern District of Indiana

Distribution:

Benjamin C. Deming
DNL ZITO
bdeming@dnlzito.com

Joseph J. Zito
DNL ZITO
jzito@dnlzito.com

James W. Riley, Jr.
RILEY BENNETT & EGLOFF LLP
jriley@rbelaw.com

John M. Bowler
TROUTMAN SANDERS, LLP
john.bowler@troutmansanders.com